

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-2003

# Ponce-Leiva v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 01-3900

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ponce-Leiva v. Atty Gen USA" (2003). *2003 Decisions.* Paper 422.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/422

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed June 5, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-3900

JULIO DONALDO PONCE-LEIVA,
*Petitioner*

v.

JOHN D. ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES,
*Respondent*

Petition for Review of an Order
of the Board of Immigration Appeals
(No. A70 657 739)

Argued: September 13, 2002

Before: SLOVITER, RENDELL, *Circuit Judges*
and McCLURE,* *District Judge*

(Filed: June 5, 2003)

Steven A. Morley (ARGUED)
Bagia & Morley
Philadelphia, PA 19106

Attorney for Petitioner

* Hon. James F. McClure, Jr., Senior Judge, United States District Court
for the Middle District of Pennsylvania, sitting by designation.

Robert D. McCallum, Jr.
  Assistant Attorney General
Ernesto H. Molina
  Senior Litigation Counsel
Regina Byrd (ARGUED)
  Attorney
Michael P. Lindemann
  Attorney
Lyle D. Jentzer
  Attorney
Office of Immigration Litigation
Civil Division
United States Justice Department
Washington, D.C. 20044

Attorneys for Respondent

## OPINION OF THE COURT

McCLURE, *District Judge.*

This is a petition for review of a final order of removal issued by the Board of Immigration Appeals (BIA). The BIA affirmed the immigration judge's decision that Julio Donaldo Ponce-Leiva was removable and ineligible for asylum. Ponce-Leiva presents us with two questions. First, did the immigration judge's decision to hold an asylum hearing after Ponce-Leiva's attorney suddenly refused to appear constitute a denial of Ponce-Leiva's right to counsel? Second, did the immigration attorney's failure to appear at the hearing or make a timely request for a continuance constitute ineffective assistance of counsel?

We have jurisdiction to review the BIA's final order. *See* 8 U.S.C. § 1252(b)(2). We will deny Ponce-Leiva's petition for review.

I.

On April 17, 1997, Ponce-Leiva, a native and citizen of Guatemala, received personal service of a Notice to Appear. The Notice to Appear stated that because Ponce-Leiva had,

six years earlier, entered the United States without being inspected or admitted by an immigration officer, he was in violation of § 212(a)(6)(A)(i) of the Immigration and Naturalization Act (INA). It informed Ponce-Leiva that a hearing was scheduled for September 9, 1997. Administrative Record (A.R.) at 119-20.

At the September 9, 1997 hearing, Ponce-Leiva appeared without counsel. The immigration judge informed him of his right to counsel and continued the hearing until November 4, 1997, giving Ponce-Leiva an opportunity to obtain representation.

On November 4, 1997, Ponce-Leiva appeared at the hearing, and this time he was accompanied by counsel. Through counsel, Ponce-Leiva admitted removability and stated that he would pursue asylum. The immigration judge scheduled the merits hearing for July 1, 1998.

On June 29, 1998, two days before the merits hearing, the immigration court received a letter from counsel dated June 25, 1998 requesting a continuance. According to the letter, Counsel would be unavailable for the merits hearing because he planned to be in San Diego. In the letter, counsel offered alternative dates for the hearing. *Id.* at 109.

On the same day, June 29, 1998, the immigration judge denied counsel's continuance request. The order gave the judge's reason, stating that "you accepted this date on November 4, 1997." *Id.* at 110.

On July 1, 1998, the merits hearing was held as scheduled. Ponce-Leiva's asylum application raised two grounds for asylum: (1) he needed a job in order to support his family; and (2) if he returned to Guatemala, he would be homeless because his family could not support him. *Id.* at 104. After explaining that he would proceed with the hearing, the immigration judge questioned Ponce-Leiva on his bases for asylum.

Through a written order and an oral decision, the immigration judge announced his decisions to deny the request for continuance and to deny Ponce-Leiva's application for asylum. *Id.* at 36-39.

The immigration judge elaborated upon his reason for denying the continuance request. He stated that continuing the hearing was not in Ponce-Leiva's best interest. He noted that while counsel has been collecting fees from Ponce-Leiva, he failed to provide Ponce-Leiva with advice on how to stay in the country. The immigration judge stated that although counsel agreed eight months earlier to appear at the hearing, he abandoned Ponce-Leiva at the last minute. The judge concluded that without any evidence that counsel was a benefit to Ponce-Leiva, Ponce-Leiva was better off if the judge went forward with the hearing. Next, the judge gave more reasons for denying the continuance request: (1) the taxpayers paid for the court time set aside for Ponce-Leiva's case; (2) the expectations of the INS would be upset if cases such as Ponce-Leiva's could not be orderly processed; (3) the ability of the immigration court to manage its docket would be impeded if attorneys could shirk their responsibilities in such a manner; and (4) according to *Matter of Santos*, 19 I&N Dec. 101 (BIA 1986), the absence of counsel is not necessarily prejudicial error.

The immigration judge then commented on his reasons for denying Ponce-Leiva's application for asylum:

> The respondent freely acknowledged that he is an economic migrant and not a "refugee." He stated this in his asylum application. When the Court interrogated him to see if there was any other aspect of his case, it found none. Again, the respondent honestly stated that he came to the United States in order to support himself and his family. The facts show clearly that the respondent was never persecuted in the past, or that he faces a reasonable possibility thereof on account of any factor protected by the [INA].

A.R. at 39. The immigration judge granted voluntary departure.

Ponce-Leiva appealed to the BIA. In his notice of appeal, Ponce-Leiva claimed that in denying the request for continuance, the immigration judge abused his discretion. *Id.* at 26. In his brief to the BIA, Ponce-Leiva argued that (1) the absence of counsel violated his right to counsel and his due process rights; and (2) counsel provided ineffective

assistance of counsel, which violated his due process rights. *Id.* at 9-12. The brief contained no explicit reference to the immigration judge's decision to deny the continuance request.

On September 24, 2001, the BIA affirmed the immigration judge's decision and dismissed the appeal.

As for the due process claim relating to the absence of counsel, the BIA stated the following:

(1) Because Ponce-Leiva could not show that he was prejudiced by the absence of counsel, there was no due process violation;

(2) "[I]n any event, we have determined that the absence of counsel at his hearing does not alter our conclusion that the decision of the Immigration Judge is correct." The government states that the "decision" referred to in this sentence is the decision to deny counsel's continuance request. Government's Brief at 11.

(3) "We find no procedural or legal errors indicating that [Ponce-Leiva] was either deprived of a full and fair hearing or denied the opportunity to apply for all available forms of relief from removal." *Id.* at 3.

As for ineffective assistance, the BIA rejected that claim, explaining that Ponce-Leiva could neither show that his proceedings were fundamentally unfair nor show that he was prejudiced by counsel's performance. *Id.*

## II.

Before we may decide whether Ponce-Leiva's rights were violated, we first must determine whether the claims are properly before the court. The government dedicates much of its brief to arguing that Ponce-Leiva waived the claims he raises before us.

In his brief to this court, Ponce-Leiva raises the following claims: (1) the denial of the continuance request and the subsequent holding of the hearing was a denial of his right to counsel, and (2) counsel's performance constituted ineffective assistance of counsel. According to the government, both claims are barred.

The government contends that Ponce-Leiva is barred from raising with this court a claim that is based on the denial of the continuance request. It advances two arguments. First, it asserts that in determining whether Ponce-Leiva's due process rights were violated, the BIA did not consider the immigration judge's denial of the continuance request. Rather, according to the government, the BIA referred to the denial of the continuance request only in the context of whether the immigration judge abused his discretion in denying the request. The government contends that, therefore, Ponce-Leiva's current link between the continuance request and due process was not found in the BIA's final order (which is the order appealed from) and thus not properly before this court. Second, the government states that Ponce-Leiva failed in his appeal to the BIA to equate the denial of the continuance request with the denial of his due process rights. It argues that accordingly, Ponce-Leiva failed to exhaust this claim, which as a result is now barred from judicial review.

As for the claim for ineffective assistance of counsel, the government argues that because it is raised here in a different fashion than the way it was raised before the BIA, we may not review it. The government points to the fact that while the ineffective-assistance claim before the BIA related to whether the immigration judge denied Ponce-Leiva his due process rights, the ineffective-assistance claim before this court related to whether Ponce-Leiva complied with the procedural requirements announced in *Matter of Lozada*, 19 I.&N. Dec. 637 (BIA 1988). Therefore, the government argues, the BIA did not consider the instant ineffectiveness claim, and the claim is thus exhausted.

We reject the government's arguments, and we find that each of Ponce-Leiva's claims is properly before this court.

First, the due process claim is inextricably linked with the immigration judge's denial of the continuance request. Ponce-Leiva's assertion that his right to counsel was violated is based solely on the immigration judge's decision to deny the continuance request. While it would have been preferable for Ponce-Leiva to have taken greater pains in equating the denial of the continuance request with the

violation of his due process rights, the two claims are one and the same. This finding is consistent with the government's position that the BIA's order, in a sentence that did not mention the continuance request, actually addressed the continuance argument. Accordingly, in part by the government's own admissions, the issue regarding the denial of the continuance request appeared both in the BIA's order and in Ponce-Leiva's submission to the BIA, and it forms the basis of Ponce-Leiva's due process claims. Thus, no procedural bar exists.

Second, Ponce-Leiva's claim for ineffective assistance of counsel was not waived. We note that *Lozada* sets forth a three-step procedure that an alien must follow to justify the reopening of removal proceedings on the basis of ineffective assistance of counsel. The steps include, *inter alia*, filing a motion and giving the allegedly ineffective counsel an opportunity to respond. *Lu v. Ashcroft*, 259 F.3d 127, 132 (3d Cir. 2001) (citing *Lozada*, 19 I.&N. Dec. at 639). We concluded in *Lu* that the BIA's three-prong test was a reasonable exercise of the BIA's discretion, *id.* at 132, but we also warned that there were inherent dangers in applying a strict, formulaic interpretation of *Lozada. Id.* at 133. While Ponce-Leiva's brief places most of its emphasis on showing that he has fulfilled *Lozada*'s requirements, it also suggests that counsel's ineffectiveness was a denial of due process. Accordingly, we may analyze the claim, at least within the parameters of due process.

### III.

As stated above, Ponce-Leiva now raises the following claims: (1) the denial of the continuance request and the subsequent holding of the hearing constituted a violation of his statutory and constitutional right to counsel and a violation of due process; and (2) counsel's unreasonable absence at the hearing constituted ineffective assistance of counsel.

First, we consider whether denial of the continuance request violated Ponce-Leiva's right to counsel. It is well-established that an alien at an immigration hearing has some form of right to counsel. It is equally well-settled,

though, that "there is no Sixth Amendment right to counsel in deportation hearings." *Uspango v. Ashcroft*, 289 F.3d 226, 231 (3d Cir. 2002). Deportation proceedings are not "criminal prosecutions." An alien's right to counsel has been designated, at different times, as both constitutional and statutory. The statutory right is encoded in INA § 240(b)(4), which states that "the alien shall have the privilege of being represented, at no expense to the Government, by counsel of alien's choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4)(A). This statutory provision has been tracked in the applicable INS regulations. *See* 8 C.F.R. §§ 3.16(b), 240.3, 292.1, and 292.5. The constitutional right to counsel is based upon the Fifth Amendment's guarantee of due process of law. *Uspango*, 289 F.3d at 231.

While it is clear that aliens have both a statutory and a constitutional right to counsel, it is unclear how the two relate to each other. Courts of appeals have presented this relationship in different ways. According to the Ninth Circuit, due process is violated only if a violation of the statutory right to counsel is accompanied by significant prejudice. *See, e.g., Castro-O-Ryan v. U.S. Dep't. of Immigration and Naturalization*, 847 F.2d 1307, 1313 (9th Cir. 1988). The First Circuit has recognized both rights, but it has considered them without distinguishing them. *See, e.g., Nelson v. INS*, 232 F.3d 258, 261 (1st Cir. 2000). The Eighth Circuit has also recognized both, and it has suggested (but not explicitly stated) that in order for a due process violation to be found, the deprivation must be especially egregious. *See, e.g., United States v. Torres-Sanchez*, 68 F.3d 227, 230-31 (8th Cir. 1995).

Ponce-Leiva's counsel stated at oral argument that in order for Ponce-Leiva's right to counsel to have been violated, the immigration judge must have *abused his discretion* by denying the continuance request.

We find that there was no abuse of discretion or denial of Ponce-Leiva's right to counsel. The immigration judge was faced with counsel's flagrant violation of the practices and procedures of the immigration court. Counsel had been informed eight months prior to the hearing of the date on which the hearing was to be held and had agreed then to

that date. His last-minute letter requesting a continuance and his failure to secure alternate counsel were plainly inadequate. No emergency on the part of counsel was alleged. Indeed, no reason was given for counsel's trip to San Diego. The government was ready to proceed, and the court and the taxpayers had an interest in disposing of Ponce-Leiva's case. Further, the immigration judge made a reasonable determination that in light of counsel's previous deficient performance with respect to Ponce-Leiva, his absence at the hearing would have made no difference.

The dissent cites a number of cases in which courts of appeals found that an immigration judge's denial of a continuance request and subsequent holding of a hearing constituted an abuse of discretion. The cases discussed in the most detail are *Castaneda-Delgado v. INS*, 525 F.2d 1295 (7th Cir. 1975), and a case from this court, *Chlomos v. INS*, 516 F.2d 310 (3d Cir. 1975). The dissent argues that our decision is contrary to these cases and is therefore incorrect. We disagree. We believe that each is distinguishable.

In *Castaneda-Delgado*, the petitioners, who spoke no English, stated at their initial hearing that they wished to obtain representation. The judge granted a two-day continuance in order for them to secure an attorney. At the hearing two days later, the petitioners were still without a lawyer, and the judge denied their request for another continuance. The Seventh Circuit found that the judge's denial was "arbitrary and capricious and constituted a gross abuse of discretion." *Castaneda-Delgado*, 525 F.2d at 1300.

We agree that giving the *Castaneda-Delgado* petitioners a mere two days to secure counsel — and then proceeding with the hearing when they unsurprisingly did not have a lawyer — was an abuse of discretion. Ordering the petitioners to make a mad dash for representation — and then proceeding without counsel when they could not comply with the order — was fundamentally unfair. In the instant case, however, Ponce-Leiva already had an attorney, and the attorney knew eight months in advance the date of the merits hearing. He simply decided that he was not going to show up. The immigration judge took into

consideration the burden on the government and on the taxpayers, and it was not unreasonable for the immigration judge to decide that a further continuance was not warranted.

In *Chlomos*, the petitioner was subject to a deportation hearing. He was already represented by counsel, but, notwithstanding various continuances, he was unable to contact his attorney, and the court never gave notice to the attorney that the petitioner was in the process of deportation proceedings. The immigration court held the hearing without the petitioner's attorney. We found that the petitioner's right to counsel was violated: "We disapprove of an administrative agency scheduling a hearing for a person who it knows is represented by counsel without giving notice to the lawyer." *Chlomos*, 516 F.2d at 313. Our grievance with the immigration court in *Chlomos* was with the court's decision to hold a hearing without the petitioner's attorney being notified. In the instant case, counsel for Ponce-Leiva knew months in advance about the hearing, but he failed to appear. The facts are distinguishable, as is our rationale for ruling against Ponce-Leiva.

As we stated in *Chlomos*, "[w]e do not condone unnecessary delay or dilatory tactics through the ruse of counsel's unavailability." *Id.* at 314. While the dissent is correct in that the immigration judge in Ponce-Leiva's case was presented with no evidence of "unnecessary delay or dilatory tactics through the ruse of counsel's unavailability," the onus was on counsel to provide an adequate reason for his failure to appear. In *Castaneda-Delgado* and *Chlomos*, either the petitioners were unrepresented (*Castaneda-Delgado*) or counsel was uninformed of the deportation hearing (*Chlomos*). In both of these cases, the right to counsel was no doubt violated. In the instant case, however, Ponce-Leiva was represented, and counsel knew of his obligations. Counsel's failure to discharge his duties did not mean that Ponce-Leiva's "right to counsel" was violated; Ponce-Leiva was simply the victim of poor lawyering.

Our holding is consistent with the Eighth Circuit's statement that with respect to immigration proceedings,

"the mere inability to obtain counsel does not constitute a violation of due process." *Torres-Sanchez*, 68 F.3d at 231. Cases arising from the Eighth Circuit, the Tenth Circuit, and even the Ninth Circuit itself have applied this rule. *See id*; *Nazakat v. INS*, 981 F.2d 1146, 1148 (10th Cir. 1992); *Vides-Vides v. INS*, 783 F.2d 1463, 1470 (9th Cir. 1986). In each of these cases, the petitioner, after being given ample time, was unable to secure representation for an immigration hearing, and the immigration judge nevertheless proceeded with the hearing. In the instant case, Ponce-Leiva was given ample time to obtain counsel, and he in fact did so. He was unable, however, to secure counsel's presence at the hearing. This mere "inability to obtain counsel" was not a violation of due process, or a denial of Ponce-Leiva's right to counsel.

We note that in making its decision, the BIA determined that the immigration judge fulfilled his obligations under the INA, which states that "the alien shall have a reasonable opportunity to examine the evidence against the alien [and] to present evidence on the alien's own behalf." 8 U.S.C. § 1229a(b)(4)(B). In so doing, the BIA concluded that the absence of counsel does not necessarily violate the INA. The BIA's interpretation of the alien's statutory right to counsel is an interpretation of INS regulations to which we give "great deference." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001) (citations omitted).

Ponce-Leiva was not denied the right to counsel, and he was not denied the opportunity to obtain the counsel of his choice. His attorney simply failed to come through for him. While this is unfortunate, Ponce-Leiva's right to counsel was not violated.

The dissent alludes to a number of cases from the Ninth Circuit holding that an immigration judge's denial of a continuance request both constituted an abuse of discretion and violated the alien's right to counsel. *See Reyes-Palacios v. INS*, 836 F.2d 1154 (9th Cir. 1988); *Colindres-Aguilar v. INS*, 819 F.2d 259 (9th Cir. 1987); *Rios-Berrios v. INS*, 776 F.2d 859 (9th Cir. 1985); *Castro-Nuno v. INS*, 577 F.2d 577 (9th Cir. 1978). *Reyes-Palacios* and *Rios-Berrios* are analogous to *Castenada-Delgado*; that is, when the immigration judge decided to proceed with the hearing,

the alien had not yet obtained representation. These facts are distinguishable from the instant facts, in which Ponce-Leiva had already obtained the counsel of his choice. *Colindres-Aguilar* and particularly *Castro-Nuno*, however, are similar to the instant case in that the alien already was represented but the attorney inexplicably failed to appear. The Ninth Circuit found that under the circumstances of those cases, the scenarios presented a denial of the alien's right to counsel. Nevertheless, to the extent that the facts in those cases may be similar to those in the instant case, we are not thereby persuaded that our conclusions are incorrect.

We agree with the Ninth Circuit's view that the resolution of this type of case is fact-driven: "The question whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." *Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988) (citation omitted). In this case, one of the circumstances which the immigration judge apparently factored into his decision to deny the continuance was the facial lack of merit in Ponce-Leiva's application for asylum. This initial impression was borne out by the evidence presented at the hearing. It was clear at the outset, however, that Ponce-Leiva's claim for asylum was based solely on economic reasons, and therefore would not merit relief. By making this observation, we do not intend to imply that a continuance must be granted if a claim is facially meritorious. We do believe it is reasonable and proper for an immigration judge to consider the apparent lack of merit in a claim when deciding to proceed without counsel.

We do not suggest that there could never be a violation of due process by the failure to grant a continuance to an asylum seeker who is without counsel. However, under the facts and circumstances of the instant case, the immigration judge's denial of the continuance request did not constitute an abuse of discretion, did not violate Ponce-Leiva's statutory right to counsel, and did not violate any of Ponce-Leiva's constitutional rights. In *Chlomos*, in which we

ruled that an alien's right to counsel was violated, we found that there existed an "undue curtailment of the privilege of representation." *Chlomos*, 616 F.2d at 311. That was not the case here. No further due-process discussion is necessary.

## IV.

Ponce-Leiva next advances a claim for ineffective assistance of counsel. This claim is based on the Fifth Amendment due process clause. *Uspango*, 289 F.3d at 231. To advance a successful claim for ineffective assistance of counsel, an alien must demonstrate prejudice — he "must show that he was prevented from reasonably presenting his case." *Id.* (citations and internal quotation marks omitted). Ponce-Leiva has not met this burden. He admits removability, and he makes no attempt to show that the questions asked by the immigration judge did not give him the opportunity to present his case fully. Counsel's absence did not prejudice Ponce-Leiva, and therefore Ponce-Leiva's ineffectiveness claim must fail.

## V.

Because the immigration judge's denial of the continuance request did not violate Ponce-Leiva's right to counsel or constitute an abuse of discretion, and because Ponce-Leiva's claim for ineffective assistance of counsel also fails, we will deny the petition for review.

RENDELL, *Circuit Judge*, dissenting:

Two important considerations lie at the heart of this difficult case: the right to retain and be represented by counsel in immigration proceedings, and the very serious nature of immigration proceedings — especially asylum proceedings. This is an area of law where there are few signposts or settled principles to guide us, but it is nonetheless clear that the majority and I hold different views of the constraints imposed upon immigration judges by the right of one in petitioner's position to choose to be represented by counsel. Although I am in agreement with the majority with respect to its holding that Ponce-Leiva's claims were not procedurally barred, I disagree with the majority's conclusion that the immigration judge did not abuse his discretion by disregarding Ponce-Leiva's right to have counsel at his asylum merits hearing. I must, therefore, respectfully dissent.

At the outset, I think it necessary to call particular attention to the circumstances surrounding Ponce-Leiva's attempted exercise of his right to counsel. An understanding of the factual setting in this case is crucial to my view that the immigration judge did not properly handle the matter before him. At his initial hearing, Ponce-Leiva was informed by the immigration judge of his right to obtain counsel at his own expense, and the case was continued to allow Ponce-Leiva sufficient opportunity to find representation. Ponce-Leiva immediately exercised his rights by seeking and securing counsel, with whom he appeared at his removal eligibility hearing. At that hearing on November 4, 1997, Ponce-Leiva, through his counsel, conceded removability and indicated that he would pursue asylum. The immigration judge set a trial date for the merits hearing of Wednesday, July 1, 1998, some eight months later.

Sometime in the week prior to the scheduled merits hearing, Ponce-Leiva met with and paid his attorney. At that meeting, counsel notified Ponce-Leiva that he would be unable to make the hearing date and would request a continuance. In a letter dated Thursday, June 25, 1998, Ponce-Leiva's counsel requested that the immigration judge continue the case due to his inability to attend the hearing

because he would be in San Diego, California on the hearing date. On Monday, June 29, the judge received the letter, and apparently denied the request immediately, writing on the proposed order of continuance, "Denied. You accepted this date on Nov. 4, 1997." There is no evidence, however, that the denial was communicated to Ponce-Leiva or his attorney, and the record makes clear that counsel expected the continuance to be granted.

At the hearing two days later, Ponce-Leiva appeared without counsel. The immigration judge announced on the record that he had received the request for a continuance, but had decided to deny the request and proceed with the hearing. The immigration judge did not ask Ponce-Leiva whether or not he desired to proceed without representation, but opined that it would be in Ponce-Leiva's best interest to move ahead with the asylum eligibility hearing without Ponce-Leiva's retained counsel. I include the immigration judge's relevant comments, in full, in the margin.[1]

---

1. The immigration judge stated:

Initially, the question arises as to whether the case should be continued. Counsel for the respondent wrote a letter received by the Immigration Court on June 29, 1998. The Immigration Court denied the request for the continuance. The respondent's counsel did not appear and did not arrange for a substitute.

On July 1, 1998, the Immigration Court decided that it would be in the best interest of the respondent to go forward with this case. The respondent testified that he had received no assistance whatsoever from his counsel, either in preparation for the asylum hearing or advice regarding how he could attempt to obtain lawful permanent resident status in this country. To continue the case would in effect place this respondent in the hands of his counsel again, who has shown no reluctance in collecting fees from the respondent although there is no evidence that he's ever done anything in return for those fees. This would be to the financial detriment of this young man who works hard for his living in the United States.

It would also serve no useful purpose since the record shows clearly that the counsel for the respondent did nothing to help the respondent. There is little likelihood that he would do anything at a

16

The majority is obviously correct that, generally speaking, it is within an immigration judge's discretion whether to grant or deny a continuance. However, it is also the case that the scope of the judge's discretion is limited by the statutory and constitutional rights of the parties. Thus, an unjustified denial by an immigration judge of an asylum applicant's right to have his retained counsel at his side can surely constitute an abuse of discretion requiring reversal. *See, e.g., Castaneda-Delgado v. INS*, 525 F.2d 1295, 1300 (7th Cir. 1975) (holding that the failure to grant a continuance is an abuse of discretion where it deprives the alien of the right to counsel); *see also Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (recognizing, in criminal context, that trial judges have discretion over continuances, but stating nonetheless that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality"); *Romero-Morales v. INS*, 25 F.3d 125, 130-31 (2nd Cir. 1994) (citing *Ungar* in immigration context); *Rios-Berrios v. INS*, 776 F.2d 859, 862 (9th Cir. 1985) (same).

Ponce-Leiva's case presents a compelling set of facts for finding a right to counsel violation. Ponce-Leiva clearly

---

future hearing either. It would also not be in the interests of taxpayers to continue this case. Despite eight months notice of the hearing, and his own personal agreement to attend the case in November 1997, counsel for the respondent failed to come at the last minute. Every time this young man has come to Court, and he's already been here three times, he has to take off from work. It is an aggravating experience for anybody to have attend [sic] such hearings.

The taxpayers have paid for the interpreter and four hours of Court time have been set aside to hear this case. It would upset the expectations of the Service if these cases cannot be processed on an orderly basis. It would also impede the ability of the Court to manage its docket if attorneys could do what the counsel for the respondent did in this case, specifically, fail to come for hearings that have been scheduled long in advance.

Finally, the Board of Immigration Appeals has held that absence of counsel is not necessarily prejudicial err [sic]. Especially in circumstances such as those present in this case where the counsel has done nothing for the respondent.

desired representation at his asylum hearing; he sought out, retained, and paid counsel to represent him. And, crucially, Ponce-Leiva never waived his rights. The immigration judge never asked whether Ponce-Leiva wished to continue without representation, yet he proceeded with the hearing absent Ponce-Leiva's retained counsel and ultimately found him deportable.

The majority acknowledges that Ponce-Leiva's right to counsel is based on both the Constitution and a federal statute. Yet it appears to hold that Ponce-Leiva's right to counsel is somehow subservient to the immigration judge's exercise of discretion over continuance requests, even where it means that the applicant proceeds unrepresented against his wishes. The majority even likens the instant situation to one in which a deportee has been unable to obtain counsel.[2] This line of reasoning appears to render

2. This analogy seems to be ill suited to the realities of these very different factual settings and is unsupported by the case law the majority references. The decision in *Nazakat v. INS*, 981 F.2d 1146 (10th Cir. 1992), certainly was not, as the majority states, one in which an immigration judge simply proceeded with a hearing after the petitioner was unable to secure representation within a reasonable time. To the contrary, in that case the petitioner was advised of his right to counsel but waived it, choosing instead to "represent himself and continue with the hearing." *Id.* at 1147. In addition, the court's statement that "a petitioner's inability to obtain counsel . . . does not constitute a violation of due process" was in the very different context of the petitioner's argument that strict application of the applicable regulations necessarily violates due process where the petitioner appears pro se and lacks a command of English. *Id.* at 1148. Similarly, in *United States v. Torres-Sanchez*, 68 F.3d 227 (8th Cir. 1995), the petitioner made one unsuccessful attempt to secure representation but subsequently decided to proceed without counsel. The court found that the petitioner "was not deprived of counsel but knowingly waived his statutory right to counsel." *Id.* at 231. In *Vides-Vides v. INS*, 783 F.2d 1463 (9th Cir. 1986), the Court of Appeals for the Ninth Circuit held that the immigration judge had not committed reversible error in proceeding to the merits when the petitioner had been unable to secure counsel after four months and two continuances. *Id.* at 1470. However, it has clearly refused to analogize that decision to situations like the one presented here. *See, e.g., Colindres-Aguilar v. INS*, 819 F.2d 259, 261 & n.2 (9th Cir. 1987) (distinguishing *Vides-Vides* explicitly and holding that where the petitioner was represented but counsel was absent, the immigration judge was obligated to inquire whether the petitioner wished to proceed without counsel). In short, these cases lend little support to the principles upon which the majority's opinion is based.

the "right" to be represented by retained counsel to be something less than a true right. But the statute provides that aliens "shall have the privilege of being represented . . . by counsel of [their] choosing." 8 U.S.C. § 1229a(b)(4)(A).[3] I submit, accordingly, that once an asylum seeker has retained counsel, he is *entitled* to have his counsel at his asylum hearing. Proceeding without counsel in such a circumstance, absent the applicant's waiver of his right or evidence of bad faith, is a statutory violation.

While it is well settled that immigration proceedings are not criminal in nature, and that the right to counsel at issue here does not arise from the protections of the Sixth Amendment, *see, e.g.*, *Lu v. Ashcroft*, 259 F.3d 127, 131 (2001), we cannot treat immigration proceedings like everyday civil proceedings, despite their formally civil character. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) (stating that immigration proceedings are civil). Immigration proceedings occupy a unique place in law both somewhat distinct from, but sharing features with, both civil and criminal actions. We must always take care to remember that, unlike in everyday civil proceedings, "the liberty of an individual is at stake" in deportation proceedings, and that:

> [t]hough deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty — at times a most serious one — cannot be doubted. Meticulous care must be exercised lest the procedure

---

3. The majority does not assert that the statutory reference to a "privilege" makes this less than a right, nor could they. The subheading of the relevant statutory language refers to the "rights" of the alien, 8 U.S.C. § 1229a(b)(4), and the implementing regulations refer to a "right" and "entitle[ment]" to counsel. 8 C.F.R. §§ 292.1, 292.5. At any rate, the distinction between "rights" and "privileges" has been long discredited. *See, e.g.*, *Graham v. Richardson*, 403 U.S. 365, 374 (1971) ("[T]his Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.'); *Palmer v. Merzulli*, 868 F.2d 90, 98-99 (3d Cir. 1989) (Cowen, J., concurring in part and dissenting in part); *Skipworth v. United States*, 508 F.2d 598, 601 (3d Cir. 1975).

> by which he is deprived of that liberty not meet the essential standards of fairness.

*Bridges v. Wixon*, 326 U.S. 135, 154 (1945); *see also McLeod v. Peterson*, 283 F.2d 180, 183 (3d Cir. 1960) (stating that immigration proceedings involve "an especially critical and fundamental individual right"). The exceptional life-altering character of immigration proceedings underscores the gravity of the right to counsel during such proceedings, and courts have accordingly emphasized the distinct and fundamental importance of that right. *See, e.g., Lu*, 259 F.3d at 132 ("Congress has long recognized the importance of counsel in immigration proceedings."); *Escobar-Grijalva v. INS*, 206 F.3d 1331, 1335 (9th Cir. 2000) ("Deprivation of the statutory right to counsel deprives an alien asylum-seeker of the one hope she has to thread a labyrinth almost as impenetrable as the Internal Revenue Code."); *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993) (holding that the alien's right to counsel is a "fundamental" right); *Baires v. INS*, 856 F.2d 89, 91 n.2 (9th Cir. 1988) (stating that the right of counsel in deportation proceedings is "critical" and "fundamental," and that it "must be respected in substance as well as in name" (citing *Rios-Berrios*, 776 F.2d at 863-64)); *Reyes-Palacios v. INS*, 836 F. 2d 1154, 1155 (9th Cir. 1988) ("The importance of counsel, particularly in asylum cases where the law is complex and developing, can neither be overstated nor ignored."). In short, although not implicated by the Sixth Amendment's guarantees, the right is based on principles of constitutional due process.[4]

---

4. The right to counsel in immigration proceedings, while provided by federal regulation and statute, *see, e.g.,* 8 U.S.C. § 1229a(b)(4)(A); 8 C.F.R. § 240.3, is grounded in constitutional protections. *See, e.g., Montilla v. INS*, 926 F.2d 162, 166 (2d Cir. 1991) ("[T]he Due Process clauses and Immigration and Nationality Act afford[] an alien the right to counsel of his own choice at his own expense."); *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 554 (9th Cir. 1990) ("[A]liens have a due process right to obtain counsel of their choice at their own expense."); *see also Saakian v. INS*, 252 F.3d 21, 24-25 (1st Cir. 2001) (stating that the statutory right to counsel is " 'an integral part of the procedural due process to which the alien is entitled' " (quoting *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993))); *Iavorski v. INS*, 232 F.3d 124, 128 (2d Cir.

Also distinguishing the immigration context from everyday civil disputes is the fact that attorneys in immigration proceedings are held to a constitutionally imposed minimum level of proficiency. That is, aliens, like criminal defendants and unlike the parties in normal civil disputes, may obtain relief from the ineffective assistance of counsel. *See, e.g., Lu,* 259 F.3d at 131-32 (stating that due process guarantees the effective assistance of counsel in immigration proceedings); *see also, e.g., Friedman v. Arizona,* 912 F.2d 328, 333 (9th Cir. 1990) (stating that there is no right of effective assistance of counsel in a civil case); *Glick v. Henderson,* 855 F.2d 536, 541 (8th Cir. 1988) (same). Indeed, Ponce-Leiva makes just such a claim here.

The majority's opinion conflicts with our single most relevant decision in this area, *Chlomos v. INS,* 516 F.2d 310 (3d Cir. 1975). In *Chlomos,* we considered the "extent to which an administrative agency may curtail a statutorily conferred right to the assistance of retained counsel." *Id.* at 311. The case involved an alien who clearly expressed his desire to retain representation, but who ultimately went unrepresented during a deportation hearing in Florida. *Id.* at 312-13. Over a period of several weeks, the case was twice continued in order to allow Chlomos an adequate opportunity to obtain representation. *Id.* Although Chlomos had retained counsel, he appeared unrepresented at his scheduled hearing. *Id.* Apparently Chlomos had serious difficulty in contacting his attorney — at least partly due to the fact that he was incarcerated — and the agency never sent notice to counsel, even though it had ready access to his contact information. *Id.* at 312-314. Chlomos's counsel had requested that the case be transferred back to New Jersey, the venue in which his case had initially originated, but the immigration judge simply proceeded with the

_____

2000) (same). *See generally Reno v. Flores,* 507 U.S. 292, 307 (1993) ("It is well established that the Fifth Amendment entitled aliens to due process of law in deportation proceedings." (citing *The Japanese Immigrant Case,* 189 U.S. 86, 100-01 (1903))); *Chlomos v. INS,* 516 F.2d 310, 313 (3d Cir. 1975) ("An alien subjected to deportation proceedings is entitled to due process of law.").

hearing. *Id.* Chlomos refused to participate in the proceedings besides a repeated request to speak with his lawyer, and was ultimately ordered to be deported. *Id.* at 313.

We reversed. We began by reiterating the gravity of the alien's constitutionally guaranteed right to due process and statutorily guaranteed right to counsel during immigration proceedings. *Id.* at 313-14. Holding that Chlomos's rights had been subject to an "undue curtailment" necessitating reversal, *id.* at 311, we stated:

> While two continuances were granted in this case, as a practical matter, they were inadequate to make the services of his chosen counsel available to petitioner. There was no necessity for the hasty hearing by the immigration judge, and arrangements could have been made which would have been reasonable for both the government and petitioner's counsel. We do not condone unnecessary delay or dilatory tactics through the ruse of counsel's unavailability. Efficient management of the administrative process can prevent such abuse when it appears. That did not appear to be a problem here.

*Id.* at 314.

Our analysis in *Chlomos* has never been overruled, or even questioned, and I submit that it directly controls the case before us. Just as in *Chlomos*, the immigration judge here was not presented with evidence of "unnecessary delay or dilatory tactics through the ruse of counsel's availability." And, just as in *Chlomos*, here Ponce-Leiva clearly sought to have representation during his disposition hearing but went without representation because of the refusal of the immigration judge to continue the case without any compelling justification. The majority distinguishes *Chlomos* based on the "decision to hold a hearing without the petitioner's attorney being notified." Here, however, the record similarly does not reflect that counsel was advised that his continuance request was denied. Further, given the emphasis both the immigration judge and the majority apparently place on the tardiness and inadequacy of counsel's request for a continuance, it is

notable that in *Chlomos* there was *no* request for a continuance — only an informal request for a transfer made by Chlomos's counsel to the INS. Nonetheless, in *Chlomos* we essentially held that the immigration judge was under an obligation to continue the case *sua sponte* in order to preserve Chlomos's right to counsel. Similarly, the immigration judge here was under an obligation to either obtain a waiver from Ponce-Leiva of his right to counsel, or continue the case to allow an adequate opportunity for Ponce-Leiva to secure his counsel's presence. *See Chlomos*, 516 F.2d at 313-14.

The majority's assessment of this case is also contrary to the settled views of several of our sister Courts of Appeals, views that in large part echo our opinion in *Chlomos*. The decision by the Court of Appeals for the Seventh Circuit in *Castaneda-Delgado v. INS*, 525 F.2d 1295 (7th Cir. 1975), is one instructive example. At their initial hearing, the Castanedas stated that they wished to obtain representation, and the court granted a two-day continuance for that purpose. *Id.* at 1297. At the hearing two days later, the Castanedas again appeared unrepresented, explaining that their attorney was unable to come but that they would seek alternative counsel. *Id.* Their request for another continuance, however, was denied by the immigration judge, who proceeded to the merits and found them deportable. *Id.*

Like Ponce-Leiva, the Castanedas urged that "in summarily denying them a further continuance . . . and in compelling them to proceed without an attorney," the immigration judge's actions were "arbitrary, capricious, and an abuse of discretion which improperly and effectively denied them of their right to be represented by an attorney of their choice." *Id.* at 1298. The INS also took a similar position to the one taken here, arguing that the denial of the continuance "was wholly within the discretion of the immigration judge and [could] not be said to be arbitrary and capricious or an abuse of discretion." *Id.* at 1299.

The Seventh Circuit reversed, finding the arguments of the INS "singularly unimpressive." *Id.* The court recognized that "the question of whether or not to grant a continuance at such an administrative hearing ordinarily rests in the

discretion of the officer conducting the hearing (in this case, the immigration judge)," but reiterated that such decisions are "subject to reversal if there is a clear showing of abuse of that discretion." *Id.* at 1300. Analyzing the facts before them, the court then stated:

> In the case at bar, the immigration judge had no justification for denying a reasonable further continuance to the Castanedas for the purpose of obtaining counsel . . . and then compelling them to proceed with the hearing without representation. By so doing, the immigration judge denied the Castanedas procedural due process by depriving them of their right to counsel granted by statute and regulation. We hold that these actions of the immigration judge were arbitrary and capricious and constituted a gross abuse of discretion.

*Id.* (citing *Chlomos v. INS*, 516 F.2d 310 (3d Cir. 1975)).

The Seventh Circuit has since reaffirmed the principles underlying that decision. *See, e.g.*, *Snajder v. INS*, 29 F.3d 1203 (7th Cir. 1994). Similarly, the Court of Appeals for the Ninth Circuit has time and again held that the "[f]ailure to accord an alien" his statutory right to counsel "may, in light of the entire administrative record, be an abuse of discretion requiring remand." *Castro-O'Ryan v. INS*, 847 F.2d 1307, 1312 (9th Cir. 1988); *see also, e.g.*, *Escobar-Grijalva v. INS*, 206 F.3d 1331 (9th Cir. 2000) (holding that the immigration judge's denial of petitioner's right to choose counsel was an abuse of discretion). Particularly relevant is a long line of cases, with facts resembling those here, holding that the decision of an immigration judge to deny a continuance may violate the alien's right to counsel and constitute an abuse of discretion. *See, e.g.*, *Reyes-Palacios v. INS*, 836 F.2d 1154 (9th Cir. 1988) (reversing on this basis); *Colindres-Aguilar v. INS*, 819 F.2d 259 (9th Cir. 1987) (same); *Rios-Berrios v. INS*, 776 F.2d 859 (9th Cir. 1985) (same); *Castro-Nuno v. INS*, 577 F.2d 577, 579 (9th Cir. 1978) (same).

The majority downplays the significance of this line of cases, but I submit that they represent ample authority to support Ponce-Leiva's claim that his rights were violated.[5]

---

5. The majority distinguishes the Castanedas' situation from Ponce-Leiva's by concluding that, here, Ponce-Leiva had an attorney, and the

Just as in *Castaneda-Delgado*, here the immigration judge had no reasonable justification for denying the continuance and compelling Ponce-Leiva to proceed without counsel. Although the record suggests that the immigration judge was sincere in his belief that proceeding with the asylum eligibility hearing without counsel was in Ponce-Leiva's best interests, his reasons for doing so were entirely subjective, uninformed by any dialogue with Ponce-Leiva regarding his wishes. The majority states that the immigration judge "made a reasonable determination that in light of counsel's previous deficient performance with respect to Ponce-Leiva, his absence at the hearing would have made no difference." Yet there is in fact little evidence to support any conclusion of deficiency on the part of counsel. It is clear from counsel's letter to the immigration judge that he assumed the continuance request would be granted. After offering a number of alternative hearing dates during the following weeks, counsel wrote, "I will communicate with the Court upon my return in order to arrange a suitable trial date." Furthermore, there is no evidence of any dilatory behavior or bad faith on the part of counsel prior to the continuance request. To the contrary, counsel appeared for Ponce-Leiva at a previous proceeding, and had made numerous attempts to contact his client in the months preceding the asylum merits hearing. Additionally, it is worth reiterating that there is no evidence regarding why the attorney needed the continuance other than that he needed to be in San Diego. For all we know this could have been a court ordered appearance required at the last minute. To presume some laxity or deficiency in counsel's performance, or lack of respect for the Court, on this basis is not called for. It is neither our role nor the role of the immigration judge to

---

attorney "simply decided he was not going to show up." I submit, however, that the denial of a continuance in this situation, when Ponce-Leiva had *retained and paid* counsel, and counsel had requested a first continuance by letter — not by "simply" not showing up — is even more arbitrary than the denial in *Castaneda-Delgado. See, e.g., Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1439 (9th Cir. 1986) (stating that interference with "an established, on-going attorney-client relationship" like the one present here is a "key factor" in finding a violation of the right to counsel).

speculate about missing facts, but it should be noted that it is not at all uncommon for an attorney to need a continuance for wholly legitimate reasons even where, as here, the hearing date was set far in advance. Arguably the date having been set so far in advance provides more of an excuse, as counsel likely could not have known or predicted months before what demands he might face at that time.

Finally, there is no evidence that the continuance request was made for dilatory reasons; this was the very first listing of the hearing on the merits and the very first request for a continuance. Certainly the immigration judge was correct to take note of the inconvenience and cost to the government of continuing the hearing, as well as that it would have been preferable had counsel submitted the request earlier, but those considerations have little to do with whether it was "better" for Ponce-Leiva to proceed without the attorney he retained and paid to represent him, and cannot seriously be said to overcome Ponce-Leiva's right to have counsel on these facts if he desired to do so. Thus, at least in the circumstances presented here, where the alien has exercised or clearly intends to exercise his right to counsel, and there is no evidence of waiver, bad faith, or dilatory tactics, I cannot agree with the majority that the immigration judge's failure to grant a continuance was not an abuse of discretion.

Assuming that we would find a deprivation of Ponce-Leiva's right to counsel, the government argues that no relief is warranted because Ponce-Leiva's asylum claim lacked merit and, thus, he suffered no prejudice. In *Chlomos* we did not explore the need for a showing of prejudice because it was clear under the facts present there that prejudice existed. *Chlomos*, 516 F.2d at 314. Although we have expressed our "misgivings" with the view that a showing of prejudice is necessary under these circumstances, *id.*, it is a question on which we have yet to rule.[6] *See id.*; *see also Chong v. INS*, 264 F.3d 378, 390 n.2

---

6. This is a question on which our sister Courts of Appeals have split. *Compare*, *e.g.*, *Ogbemudia v. INS*, 988 F.2d 595 (5th Cir. 1993) (requiring that alien make a showing of prejudice), *Farrokhi v. INS*, 900 F.2d 697 (4th Cir. 1990) (same), *and Michelson v. INS*, 897 F.2d 465 (10th Cir.

(3d Cir. 2001). And, because the majority holds that Ponce Leiva's right to counsel was not infringed, it did not address this unsettled question.[7]

There is persuasive authority for the conclusion that a claimant such as Ponce-Leiva need not make a showing of prejudice in order to establish a claim of reversible error when the immigration judge unjustifiably proceeds without counsel.[8] Even were we to hold that prejudice must be

---

1990) (same), *with Waldron*, 17 F.3d at 518 (requiring no showing), *and Castaneda-Delgado*, 525 F.2d at 1299 (same). It should also be noted that, although the majority suggests otherwise, the Court of Appeals for the Ninth Circuit has yet to determine "whether a showing of prejudice must be made where the right to counsel has effectively been denied a respondent in a deportation hearing." *United States v. Ahumada-Aguilar*, 295 F.3d 943, 950 (9th Cir. 2002).

7. The majority did, however, note that the immigration judge can take the "merits" into account in determining whether a continuance should be granted. But exploring and judging the "merits" absent assistance of, and explication and advocacy from, counsel, would appear only to exacerbate the denial of the right. Indeed, it seems somewhat akin to concluding that the defendant who has confessed doesn't need a lawyer.

8. The decisions of several of our sister Courts of Appeals support the proposition that where the violated right is a fundamental one grounded in federal statutory and constitutional law, such as the right to be represented by counsel in asylum proceedings, prejudice to the alien should be presumed. For instance, the Court of Appeals for the Second Circuit, in *Montilla v. INS*, 926 F.2d 162 (2d Cir. 1991), held that "an alien claiming that the INS has failed to adhere to its own regulations regarding the right to counsel in a deportation hearing is not required to make a showing of prejudice before he is entitled to relief." *Id.* at 169. On that court's view, "when a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the INS fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required." *Waldron*, 17 F.3d at 518. Similarly, the Court of Appeals for the Seventh Circuit held in *Castaneda-Delgado* that "when an alien is denied his right to counsel in a deportation hearing, the alien is entitled to a new hearing with counsel." *Snajder v. INS*, 29 F.3d 1203, 1207 (7th Cir. 1994). Analogizing the right to counsel in immigration proceedings with the right to counsel in the criminal context, the court stated that "the right to be represented by counsel of their choice granted to aliens in deportation proceedings by

present, however, the record suggests that reversal may still be appropriate. The majority seems to dismiss the possibility that Ponce-Leiva was prejudiced by the absence of his counsel, but that conclusion cannot be so easily drawn. Although Ponce-Leiva's current counsel rightly conceded at oral argument that there is little on this record to indicate that Ponce-Leiva has a meritorious claim for asylum, he also reiterated that all of the primary evidence in the record was uncounseled. *See Colindres-Aguilar*, 819 F.2d at 262 ("Retained counsel could have better marshalled specific facts in presenting petitioner's case for asylum and withholding of departure."); *Rios-Berrios*, 776 F.2d at 863 (finding that petitioner was prejudiced where the case could be "more advantageously presented" by retained counsel). Moreover, it is notable that the immigration judge never asked Ponce-Leiva on what basis he believed he was entitled to asylum. The immigration judge asked all around the issue, but never posed the question directly. Under such circumstances, it would not be unreasonable to find that Ponce-Leiva was prejudiced by the absence of counsel.

I would grant the petition for review, reverse, and remand for a new asylum hearing.

A True Copy:
　　　　Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

statute and regulations is too important and fundamental a right to be circumscribed by a harmless error analysis." *Castaneda-Delgado*, 525 F.2d at 1300. "The circumstances," the court concluded, "call for the prophylactic remedy of vacating the order of deportation and for writing thereafter on a clean slate." *Id.* at 1302; *see also Snajder*, 29 F.3d at 1207; *Yio Fong Cheung v. INS*, 418 F.2d 460 (D.C. Cir. 1969).