

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2009

# Soukhona v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3193

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Soukhona v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1238.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1238

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3193
_____

IBRAHIMA SOUKHONA,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A077-835-405)
Immigration Judge:  Honorable Kenneth Josephson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2009
Before: FISHER, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: June 4, 2009)
_____

OPINION
_____

PER CURIAM

    Ibrahima Soukhona, a native and citizen of Mauritania, petitions for review from a

decision of the BIA denying his applications for asylum and withholding of removal.  For

the following reasons, we will deny the petition for review.

Soukhona was admitted to the United States on a student visa on August 21, 1999. His visa authorized him to enroll at Ohio Dominican College, but he failed to enroll at the school. Instead, he filed an affirmative application for asylum on November 30, 1999. Soukhona claimed that the Mauritanian government repeatedly arrested and detained him on the basis of his participation in student strikes, his opposition to slavery in Mauritania and his race. The government initiated removal proceedings and issued a Notice to Appear on June 27, 2003, charging Soukhona with removability on the basis of failing to comply with the conditions of his admission under INA § 237(a)(1)(C)(i). (A.R. 476-77.) At a master calendar hearing on September 30, 2005, Soukhona was represented by counsel and conceded removability. On July 6, 2006, with the assistance of new counsel, he filed a supplemental statement in support of his application. A merits hearing was scheduled for October 4, 2006. On that date, Soukhona and his counsel requested that his counsel be permitted to withdraw from the representation. The Immigration Judge informed Soukhona that he could proceed with his current counsel or represent himself at the hearing, but that he would not continue the hearing to permit Soukhona to find new counsel. Soukhona stated that he was prepared to proceed pro se, and the IJ granted counsel's request to withdraw.

Proceeding without representation by counsel, Soukhona testified that he was detained on at least four separate occasions by the Mauritanian government. The first incident was in 1987, when Soukhona was arrested as a high school student for

2

participating in a student strike. (A.R. 75.) He was detained for two weeks and released after he signed papers regarding the arrest. As the public school did not permit Soukhona to continue his studies after this incident, he began attending a private school. The second incident was in 1991, when "White Moor" policemen detained him and several of his black Mauritanian friends who were returning from a trip to Senegal. The policemen allegedly detained them, forced them to undress and ridiculed them because of their race. In March 1994, Soukhona was arrested for joining an association of black students at the National Public University of Mauritania. (A.R. 77-78.) He was arrested and detained from March 29, 1994, to April 30, 1994. After signing papers regarding his arrest, Soukhona was released. The University subsequently expelled Soukhona, and Soukhona began suffering from depression.

In June 1994, Soukhona presented a paper at an anti-slavery conference in Mauritania. (A.R. 84-85.) He was arrested and detained for twenty days for attracting negative publicity about slavery in Mauritania, which persists despite its official abolition in 1981. Following his release, Soukhona joined a group known as "SOS Slavery," which fought the enslavement of blacks by White Moors. (A.R. 82.) Soukhona then obtained a Mauritanian passport and left his country to study in Morocco on September 5, 1994. He studied in Morocco until 1997. Upon returning to Mauritania, Soukhona re-joined SOS. Soukhona testified that the organization was formed in 1995, but that he had joined the group in 1994. (A.R. 83.) When the IJ asked for clarification, Soukhona explained that

3

the organization existed in some form in 1994, but was "officially recognized" by the government in 1995. When the IJ asked why the government would officially recognize an organization opposed to its policies, Soukhona stated, "Because you can no longer hide things." (A.R. 83.) Soukhona was arrested again detained for two weeks in November 1997 for presenting an article at a conference. (A.R. 90-91.) He did not submit copies of the article with his application. Soukhona continued to work in Mauritania as a tutor, undisturbed, until his departure for the United States in 1999. He testified that he was "doing things in hiding," although he held a full-time job and lived openly. (A.R. 98.) He testified that he speaks with his family about once every two months, and they have not mentioned that government officials are looking for him. (A.R. 100.) He also testified that he has not sought any medical treatment for his depression, although he has tried herbal remedies. Since coming to the United States, Soukhona has attended one protest, back in 2002, regarding the issue of slavery.

At the end of his testimony, Soukhona requested counsel. The IJ denied his request for counsel. The IJ then made an adverse credibility determination and denied Soukhona all relief. The IJ based his adverse credibility determination on the following inconsistencies or omissions: (1) Soukhona's failure to list his 1987 and 1991 detentions in his initial written asylum application; (2) Soukhona's ability to enter and exit Mauritania with official papers without incident; (3) his claim that he was arrested in November 1997 for a period of twenty days, not one week in October 1997, as stated in

4

his supplemental statement; (4) petitioner's ability to remain in Mauritania from 1997 to 1999 without incident, and his improbable explanation that he was "in hiding" while working full-time; (5) and that petitioner claims to have encountered problems advocating a position that is identical to the government's official position on the issue of slavery.

Soukhona appealed, but failed to file a brief with the BIA. He also apparently filed a motion to reopen based on his prior counsel's alleged ineffective assistance.[1] The BIA denied Soukhona's motion to reopen and affirmed the IJ's decision on the basis that the IJ's adverse credibility determination was not clearly erroneous, that Soukhona had not stated a claim for ineffective assistance of counsel, that he had not demonstrated that he had been denied an opportunity to be represented by counsel, and that the IJ's denial of a continuance was proper.[2] Soukhona filed a timely petition for review.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). "[W]e review the IJ's opinion to the extent the BIA relied upon it." Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008). We will uphold an IJ's adverse credibility determination if supported by substantial evidence. Chukwu v. Att'y Gen., 484 F.3d 185, 190 (3d Cir. 2007). As Soukhona filed his asylum application before the passage of the REAL ID Act, only

---

[1] The administrative record does not contain a motion to reopen.

[2] The BIA determined that Soukhona had waived his claim under the Convention Against Torture because he failed to raise the claim on appeal to the BIA. Therefore, Soukhona's CAT claim is not before us.

discrepancies involving the "heart of the asylum claim" may support an adverse credibility finding. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (internal quotation omitted).

Soukhona's conflicting statements regarding the length of his 1997 detention are substantial evidence supporting the IJ's adverse credibility determination. Because this inconsistency relates to the nature of the persecution he allegedly experienced, it goes to the heart of his asylum claim. See Xie v. Ashcroft, 359 F.3d 239, 246 (3d Cir. 2004) (petitioner's inconsistent statements regarding detention after the birth of his second child went to the heart of his asylum claim). Combined with his failure to mention his 1987 and 1991 detentions in his written application,[3] and his ability to travel in and out of Mauritania while studying in Morocco and to live in Mauritania unharmed for two years before leaving for the United States, we believe that substantial evidence supports the IJ's adverse credibility determination.

Soukhona also contends that he was denied counsel of his choice, and that the IJ improperly denied his request for a continuance to enable him to find a new lawyer after granting his attorney's motion to withdraw. An IJ may "grant a motion for a continuance for good cause shown." 8 C.F.R. § 1003.29. We review an IJ's decision to deny a

---

[3]Soukhona's initial application was filed several months after Soukhona arrived in the United States. His statements were not elicited in a coercive environment and are not comparable to airport interview statements. Cf. Balasubramanrim v. I.N.S., 143 F.3d 157, 162-63 (3d Cir. 1998).

continuance for an abuse of discretion. Hashmi v. Att'y Gen., 531 F.3d 256, 259 (3d Cir. 2008). "[T]he mere inability to obtain counsel does not constitute a violation of due process." Ponce-Leiva v. Ashcroft, 331 F.3d 369, 376 (3d Cir. 2003).

The record reveals that Soukhona had counsel from at least September 2004 until October 4, 2006. At the merits hearing, Soukhona's attorney sought to withdraw and the IJ granted the request. (A.R. 64-65.) However, the IJ noted that the case had been pending for three years and gave Soukhona the choice of proceeding pro se or being represented by counsel of record. Soukhona chose to proceed pro se because neither he nor his attorney wished for his attorney to represent him at the hearing. At the close of his testimony, Soukhona requested counsel.

Given that Soukhona had counsel during most of the proceedings and did not seek counsel's withdrawal until the date of the merits hearing or shortly before it, we agree that Soukhona was not denied counsel in violation of due process, and that the IJ did not abuse his discretion by denying a continuance so that he could find new counsel. Although Soukhona argues in his brief that he felt "compelled" to represent himself when his counsel sought to withdraw, we discern no principled distinction between his situation and that facing the petitioner in Ponce-Leiva. In that case, petitioner's attorney had eight months' notice of the date of the merits hearing; he requested a continuance without offering any reason, which was denied, and then failed to appear for the merits hearing. The petitioner was forced to proceed pro se and claimed on appeal that he had been

7

denied counsel in violation of due process. We ruled that there was no due process violation under those circumstances because petitioner had counsel, but his "attorney simply failed to come through for him." Ponce-Leiva, 331 F.3d at 376. Here, Soukhona's counsel sought to withdraw on the day of the merits hearing, apparently at Soukhona's behest. Where the petitioner seeks to remove counsel for unstated reasons on the day of a merits hearing, the date of which had been set over a year before, denial of a continuance to permit the petitioner to seek new counsel does not constitute a denial of counsel and does not violate due process.

Soukhona does not raise in his informal brief any argument regarding the BIA's decision denying his motion to reopen due to allegedly ineffective assistance of counsel. Accordingly, we deem that claim waived. Anspach v. City of Phila., 503 F.3d 256, 259 n.1 (3d Cir. 2007).

For these reasons, the petition for review will be denied.

8