Mark A. CLIFFORD, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 02–982C.

United States Court of Federal Claims.

Feb. 2, 2004.

John A. Wickham, Evergreen, CO, for plaintiff.

Margaret E. McGhee, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Lt. Col. Tara A. Osborn and Major Gary P. Corn, Department of the Army, U.S. Army Litigation Division, Arlington, VA, of counsel.

## *OPINION*[1]

MILLER, Judge.

This case is before the court after argument on cross-motions for judgment on the administrative record pursuant to RCFC 56.1(b). Alleging a violation of his right to counsel before a military separation board, a servicemember seeks lost pay for 14 days and lost separation pay. The issue for decision is whether the separation board complied with applicable regulations when it proceeded to conduct a hearing in the absence of both military counsel and the servicemember's civilian counsel, which resulted in a decision to separate him involuntarily from

the service under other than honorable conditions.

## FACTS

The following facts are derived from the administrative record. Mark A. Clifford ("plaintiff") was a Sergeant First Class in the U.S. Department of the Army (the "Army") on May 12, 1999, when he was discharged under other than honorable conditions. Prior to discharge plaintiff was an Army recruiter stationed in Beckley, West Virginia.

On December 31, 1997, the Kanawha County Sheriff's Department began a criminal investigation of plaintiff regarding an alleged sexual assault of a 17–year old prospective Army recruit. As a result of the sheriff's investigation, plaintiff was charged with second degree sexual assault.[2] The Army Criminal Investigation Division (the "CID") began its own investigation of plaintiff on January 7, 1998. Following the CID investigation, Lt. Col. Thomas J. McCool, plaintiff's commanding officer, initiated administrative action on July 23, 1998, to separate plaintiff from the Army.

In his July 23, 1998 letter to plaintiff, Lt. Col. McCool recommended plaintiff's discharge under other than honorable conditions and informed him of his right to an administrative board hearing and representation by counsel. Plaintiff received the letter on July 24, 1998, and on August 20, 1998, he requested an administrative separation board and representation by counsel. Plaintiff's August 20, 1998 letter was also signed by Capt. Kurt A. Scharfenberger, Judge Advocate, an attorney with the Army Trial Defense Service.

Plaintiff waived his right to trial by court-martial for the underlying criminal conduct, electing instead an administrative proceeding pursuant to Article 15 of the Uniform Code of Military Justice. At the September 4, 1998 Article 15 proceeding, Lt. Col. McCool found that plaintiff had committed the charged offenses of absence without leave, failure to obey an order regarding personal

---

1. This opinion was issued under seal on January 8, 2004. The parties were to identify protected/privileged material subject to deletion by January 16, 2004. No deletions were requested.

2. Plaintiff's state criminal trial began on May 12, 2003. The judge declared a mistrial on May 16, 2003, due to the jury's inability to reach a verdict.

contact with a recruit, and making a false official statement. *See* 10 U.S.C. §§ 886, 892, 907 (2000).

On January 7, 1999, Capt. Charles E. Lohmeyer notified plaintiff by memorandum that an Administrative Separation Board ("the board") would be convened on January 22, 1999, to determine whether plaintiff should be discharged from the Army under chapter 14–12*c*, Army Regulation ("AR") 635–200 (Oct. 17, 1990). That memorandum informed plaintiff of his procedural rights, including the right to "appear in person with or without representation." By memorandum dated January 15, 1999, Capt. Scharfenberger requested, on behalf of plaintiff, a delay of the board until March 2, 1999, because of previously scheduled trials in February 1999. In her January 20, 1999 memorandum, the board president denied Capt. Scharfenberger's six-week request as unreasonable, but did grant a two-week delay, rescheduling the board for February 3, 1999.

John R. Mitchell, Jr., an attorney and state legislator, sent a letter via facsimile transmission to Capt. Lohmeyer on January 29, 1999, stating that he was plaintiff's civilian counsel and requesting that the board be rescheduled "after June 1, 1999," due to his legislative and trial schedule. The board president denied the extension by memorandum dated January 29, 1999, concluding that the proceedings "should not be delayed unduly to permit a respondent to obtain a particular counsel or to accommodate the schedule of such counsel."

Capt. Scharfenberger responded to the denial of Mr. Mitchell's request by memorandum dated February 2, 1999, in which he urged the board to accommodate plaintiff and his civilian attorney. After referring to the conflict between the rescheduled hearing date and civilian counsel's absence as a "dilemma," he stated: "Although I advised [plaintiff] of his election rights under Chapter 14, 635–200, in July of 1998, I have not been detailed to represent him in this matter. No request for counsel has been received by the Fort Knox Trial Defense Service."

Major Lisa Anderson–Lloyd, Deputy Staff Judge Advocate, answered Capt. Scharfenberger by memorandum dated February 3, 1999, stating that the board "has made reasonable attempts to accommodate" plaintiff. Although the board denied Capt. Scharfenberger's request for a six-week delay, it granted a shorter delay in light of his schedule. She explained that the board was unaware that Mr. Mitchell was representing plaintiff until the attorney's request for postponement was received, five days before the board was scheduled to begin proceedings. (Mr. Mitchell had been representing plaintiff in his state criminal prosecution since January 1998.) She complained that Mr. Mitchell had requested a delay of over four months, but did not "give a specific date on which [he] would be ready to proceed."

In the same memorandum, Major Anderson–Lloyd indicated that the time frame affected this case to the extent that the board was constrained by plaintiff's expiration of time of service ("ETS") on May 26, 1999. The ETS establishes a "drop dead date" beyond which the board cannot convene. Transcript of Proceedings, *Clifford v. United States*, No. 02–982C, at 62–63 (Fed. Cl. Nov.18, 2003) ("Tr.").

The board convened on February 3, 1999, and plaintiff appeared without counsel. The Summary of Board Proceedings reflects that plaintiff objected: "I feel that reasonable attempts were not made to accommodate a delay with my attorney." The board president responded that she received the request from Mr. Mitchell on January 29, 1999, to delay the board until after June 1, 1999, which she determined was an "undue request." According to the board president, she spoke with Mr. Mitchell about the delay and "we ended up sticking with [February 3, 1999]." Furthermore, she stated that plaintiff "had the opportunity to get military counsel and . . . elected to go with civilian counsel who could not be here today."[3]

By unanimous three-member vote, the board found that plaintiff did commit serious offenses and should be separated from the Army. Two members of the board voted for

---

**3.** Although the quotations are not from the verbatim transcript, they conform to the verbatim transcript submitted by plaintiff. *See infra* note 7.

discharge under other than honorable conditions; one member voted for a general discharge. Major General Evan R. Gaddis, Commander of Army Recruiting Command, approved the board's findings on March 31, 1999, and directed that plaintiff be separated under other than honorable conditions. In accordance with AR 600–8–19 ¶ 6–15 (Nov. 1, 1991), plaintiff was reduced in rank to the lowest enlisted grade, E–1. Plaintiff was discharged from the Army on May 12, 1999.

By this action plaintiff seeks to set aside his May 12, 1999 other than honorable discharge and his March 31, 1999 demotion from Sergeant First Class (E–7) to Private (E–1). He claims back pay and allowances from March 31 to May 26, 1999, at grade E–7; severance pay; and correction of his discharge certificate to reflect a discharge for honorable service. The monetary relief includes lost pay and allowances during the 14–day involuntary separation preceding his expiration of time of service ("ETS"), as well as lost separation or severance pay that a soldier would receive upon an honorable discharge.

## DISCUSSION

### 1. *Standard of review*

The Court of Federal Claims' review of administrative decisions is limited to determining whether the board action was "arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced." *Clayton v. United States,* 225 Ct.Cl. 593, 595, 1980 WL 13179 (1980) (reviewing Air Force Discharge Review Board's denial of plaintiff's claim to upgrade discharge status to honorable). A plaintiff must overcome the presumption that administrators of the military discharge their duties correctly, lawfully, and in good faith. *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979).

4. Generally, AR 635–200 governs personnel separations of enlisted personnel. AR 635–200 ¶ 14–12*c,* "Commission of a serious offense," provided authority for plaintiff's discharge. AR 635–200 ¶ 14–12*c* ("Commission of a serious military or

■ Judicial review of a military discharge decision is circumscribed by two maxims. The first is that "[t]he merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States,* 68 F.3d 1317, 1322 (Fed.Cir.1995). The corollary is that a court is limited to examining whether the applicable procedures were followed. *See Adkins,* 68 F.3d at 1323 ("[A] challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy.").

[A] claimant seeking back pay on account of a separation . . . must show both that (a) there was a material legal error or an injustice in the proceedings of the correction board, or other entity within the military department, which led to the adverse action against him, and also (b) that there is an adequate nexus or link between the error or injustice and the adverse action.

*Hary v. United States,* 223 Ct.Cl. 10, 15, 618 F.2d 704, 706–07 (1980) (citations omitted).

### 2. *Relevant regulations*

Plaintiff claims specifically violations of AR 635–200 ¶ 2–10 (Oct. 17, 1990).[4] This regulation prescribes the procedure that the board must follow if the servicemember appears before the board *pro se,* sets out the general 30-day limit to requests for additional delays after initial notice, and requires that the summaries of board proceedings must be accurate. It provides, as follows:

*b.* The commander will advise the soldier in writing of the specific basis (subparagraph number and description heading) for the proposed discharge action. The commander will also advise the soldier that he or she has the following rights:

(1) The soldier may appear in person, with or without counsel for representation, or, if absent, be represented by counsel at all open proceedings of the board. When the soldier appears before a board without representing counsel, the record will show that the president of the board counseled

civil offense, if the specific circumstances of the offense warrant separation and a punitive discharge would be authorized for the same or a closely related offense under the [Manuel for Courts-Martial].").

the soldier. The soldier will be counseled as to type of discharge he or she may receive as a result of the board action, the effects of such a discharge in later life, and that he or she may request representing counsel. The record will reflect the soldier's response.

Subpart *a* of the same regulation provides:

A soldier under military control will be notified in writing of the convening date of the board at least 15 days before the hearing. This will allow the soldier and the appointed counsel time to prepare the case. The written notice will state that, if the soldier fails to appear before the board when scheduled, by willfully absenting himself or herself without good cause he or she may be discharged from or retained in the service without personal appearance before a board. The soldier will be notified of the names and addresses of witnesses expected to be called at the board hearing. The soldier will also be notified that the recorder of the board will, upon request of the soldier, try to arrange for the presence of any available witness that he or she desires to call. A copy of the case file, including all affidavits and depositions of witnesses unable to appear in person at the board hearing will be furnished to the soldier or the counsel as soon as possible after it is determined that a board will hear the case. When, for overriding reasons, the minimum of 15 days cannot be granted the president of the board will insure that the reason for acting before that time is fully explained. The reason will be recorded in the proceedings of the board. Requests for an additional delay, normally not to exceed 30 days after initial notice, will be granted if the convening authority or president of the board believes such delay is warranted to ensure that the respondent receives a full and fair hearing. The decision of the president is subject to being overruled by the convening authority upon application by the recorder or the respondent; however, the proceedings need not be delayed pending review.

Subpart *f* provides:

The proceedings of the board will be summarized as fairly and accurately as possible. They will contain a verbatim record of the findings and recommendations (App.B).

The parties also cite other regulations, of which the most pertinent are set forth. AR 635–200 ¶ 1–24*a* ("When investigation is initiated with view to trial by court-martial or soldier is awaiting trial or result of trial") provides:

A soldier may be retained after his or her term of service has expired when—

(1) An investigation of his or her conduct has been started with a view of trial by court-martial.

(2) Charges have been preferred.

(3) The soldier has been apprehended, arrested, confined, or otherwise restricted by the appropriate military authority. However, if charges have not been preferred, the soldier will not be retained more than 30 days beyond the ETS unless the general court-martial convening authority approves. (See para 1–33.).

AR 635–200 ¶ 2–4 affords a servicemember the right to request military counsel and to retain civilian counsel. As modified, the regulation provides, *inter alia*, that the soldier will be further advised of the following rights:

To request appointment of a military counsel for representation. Respondents may retain civilian counsel at no expense to the Government. If the respondent is absent, the counsel may present the case before an administrative discharge board.

AR 635–200 ¶ 2–6*f* (3), (4) outlines the board's procedures for correcting its own procedural and prejudicial errors. The regulation provides:

(3) If there is an apparent procedural error or omission in the record of proceedings that may be corrected without reconsideration of the findings and recommendations of the board, return the case to the same board for corrective action.

(4) If the board error materially prejudiced a substantial right of the soldier, the separation authority may act only as can be sustained without relying on the pro-

ceedings affected by the error.... Unless the new board considers substantial additional evidence unfavorable to the soldier, the separation authority may not approve any findings and recommendations of the new board less favorable than those rendered by the first board.

Several regulations delimit the right to counsel. AR 15–6 ¶ 5–6a (Sept. 30, 1996),[5] provides:

*Entitlement.* A respondent is entitled to have counsel and, to the extent permitted by security classification, to be present with counsel at all open sessions of the board. Counsel may also be provided for the limited purpose of taking a witness's statement or testimony, if respondent has not yet obtained counsel. An appointed counsel will be furnished only to civilian employees or members of the military.

Of critical import to resolution of plaintiff's claims is AR 15–6 ¶ 5–6c, which provides:

*Delay.* Whenever practicable, the board proceedings will be held in abeyance pending respondent's reasonable and diligent efforts to obtain civilian counsel. However, the proceedings should not be delayed unduly to permit a respondent to obtain a particular counsel or to accommodate the schedule of such counsel.

The prefatory language of AR 15–6 ¶ 5–8a also plays a key role. It provides:

*Rights of respondent.* Except for good cause shown in the report of proceedings, a respondent is entitled to be present, with counsel, at all open sessions of the board that deal with any matter concerning the respondent. The respondent may—

(1) Examine and object to the introduction of real and documentary evidence, including written statements.

(2) Object to the testimony of witnesses and cross-examine witnesses other than the respondent's own.

(3) Call witnesses and otherwise introduce evidence.

(4) Testify as a witness; however, no adverse inference may be drawn from the exercise of the privilege against self-incrimination. (See para 3–6c(5).).

3. *The parties' positions*

Plaintiff contends that his due process rights were violated when the board president proceeded with the February 3, 1999 hearing in the absence of his counsel (despite subsequent pleas for representation during the hearing) and without the "warnings colloquy" that plaintiff claims is required by regulation. *See* AR 635–200 ¶ 2–10b (1) ("The soldier may appear in person, with ... counsel for representation.... When the soldier appears before a board without representing counsel, the record will show that the president of the board counseled the soldier."). Proceeding with the hearing voided his discharge, plaintiff argues, as it materially prejudiced his substantial right to a full and fair hearing as guaranteed in AR 635–200 ¶ 2–6f (4) ("If the board error materially prejudiced a substantial right of the soldier, the separation authority may act only as can be sustained without relying on the proceedings affected by the error.").[6]

Defendant maintains that the board complied with all applicable regulations and that proceeding in the absence of plaintiff's counsel was within the discretion of the board president. The grant of a two-week delay,

---

**5.** AR 635–200 ¶ 2–10e requires the board to follow the procedures outlined in AR 15–6 "Boards, Commissions, and Committees: Procedure for Investigating Officers and Boards of Officers." AR 635–200 ¶ 2–10e ("the board will conform to the provisions of AR 15–6 applicable to formal proceedings with respondents").

**6.** Plaintiff also asserts that *Faretta*-type warnings were required because of the liberty interest at stake. *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that, prior to allowing an accused to waive legal representation, judge must ensure accused is aware of nature of charges, possible penalties, and disadvantages of self-representation). This argument fails because the board was not a criminal proceeding. *See Weaver v. United States,* 46 Fed. Cl. 69, 79 (2000). The *Weaver* court disposed of the servicemember's claim that his Sixth Amendment right to confrontation was violated because "Sixth Amendment guarantees only arise in criminal prosecutions," and "administrative discharge hearings are not criminal proceedings." *Id.*

rather than the six-week delay that plaintiff's military counsel had requested, was in accord with the regulations. *See* AR 15–6 ¶ 5–6*c* ("[T]he proceedings should not be delayed unduly to permit a respondent to obtain a particular counsel or to accommodate the schedule of such counsel."). Furthermore, in defendant's view, the two-week extension provided plaintiff's counsel with additional time, while not exceeding the normal 30–day time frame set forth in AR 635–200 ¶ 2–10*a*. *See* AR 635–200 ¶ 2–10*a* ("Requests for an additional delay, normally not to exceed 30 days after initial notice . . . ."). Similarly, defendant contends that the board president acted within her discretion in denying plaintiff's civilian counsel a four-month extension because that would have delayed the board beyond plaintiff's ETS. *See* AR 635–200 ¶ 1–24*a* ("A soldier may be retained after his or her term of service has expired" only in certain circumstances not applicable here.).

The board considered plaintiff's delay requests and advised him of his rights. The board decided to proceed after announcing that plaintiff "had the opportunity to get military counsel and . . . elected to go with civilian counsel who could not be here today." According to defendant, no further requirement is imposed that a factual and legal finding be made as to whether plaintiff would receive a full and fair hearing pursuant to AR 635–200 ¶ 2–10*a*. The regulation applies only when the hearing occurs with less than 15 days notice. *See* AR 635–200 ¶ 2–10*a* ("When, for overriding reasons, the minimum of 15 days cannot be granted the president of the board will insure that the reason for acting before that time is fully explained. The reason will be recorded in the proceedings of the board.").

Finally, defendant reads AR 600–8–19 ¶ 6–15*a* as requiring that plaintiff be demoted upon his discharge under other than honorable conditions. *See* AR 600–8–19 ¶ 6–15*a* ("[w]hen the separation authority determines that a soldier is to be discharged from the Service under other than honorable conditions, the soldier will be reduced to the lowest enlisted grade. Further board action is not required for this reduction.").

### 4. *Whether the regulations required a "warnings colloquy"*

■ Plaintiff interprets the relevant regulations as requiring the Army to provide "genuine assistance of military counsel" at his hearing. Pl.'s Br. filed Oct. 10, 2003, at 8. In effect, plaintiff sees the failure of the board president to conduct the warnings colloquy and to offer alternative military counsel as compelling him to go forward *pro se*.

Plaintiff relies on AR 635–200 ¶ 2–10*b* (1), which states: "When the soldier appears before a board without representing counsel the record will show that the president of the board counseled the soldier." The failure of plaintiff's attorneys to appear at the board, however, did not render his appearance *pro se*. Rather, he was represented by a civilian attorney, but that attorney, as well as his military counsel, made no appearance at the hearing. Plaintiff was not in the same position as a *pro se* servicemember who lacks counsel; therefore, he was not "without representing counsel" and was not entitled to the counseling ordered for *pro se* servicemembers.

### 5. *Whether the Army improperly denied requests to delay board proceedings*

■ Originally, plaintiff's board was to commence on January 22, 1999. Plaintiff's military counsel requested a delay until March 2, 1999, by a letter dated January 15, 1999. On January 20, 1999, the board president granted a delay for two of the six weeks requested, scheduling the board proceeding for February 3, 1999, and so advising Capt. Scharfenberger. Three business days prior to the date of the rescheduled board proceeding, plaintiff's civilian counsel sent a facsimile transmission request for a four-month delay, asking the board to commence after (but "close to") June 1, 1999. The board president denied this request by memorandum of January 29, 1999, citing AR 15–6 ¶ 5–6*c*, which provides that board proceedings "should not be delayed unduly to permit a respondent to obtain a particular counsel or to accommodate the schedule of such counsel." The president also listed her office number and pager number in the event it

was necessary to contact her during the weekend.

It is "settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir. 1983) (citations omitted). The court's province is limited to determining whether the procedure was contrary to existing regulations or laws, or arbitrary, capricious, in bad faith, or unsupported by substantial evidence. *Id.* In this case the issue thus becomes what AR 635–200 ¶ 2–10*b* (1) requires when a soldier appears without his attorneys, and whether the denial of the requests for delay violated that regulation. An alternate formulation of the inquiry is whether the board president abused her discretion by not continuing the proceedings when plaintiff's counsel failed to appear.

Analysis of the administrative record supports a finding that the separation board complied with the applicable regulations. "It is a well-settled canon of statutory construction that the provisions of a unified statutory scheme should be read in harmony, leaving no provision inoperative or superfluous or redundant or contradictory." *Holley v. United States*, 124 F.3d 1462, 1468 (Fed.Cir. 1997) (holding that contradiction cited by Court of Federal Claims within AR 635–100 ¶ 5–30*b* was resolved by clarity of AR 635–200 ¶ 5–30*b* (2)(b), which denied board proceedings for general discharge under honorable conditions for "probationary" officer).

The contention that AR 635–200 ¶ 2–10*b* (1) required the physical presence of counsel at plaintiff's board proceedings overstates the import of the regulation, which must be read consistently with the other regulations,

including AR 15–6 ¶ 5–6*c* which provides that "proceedings should not be delayed unduly … to accommodate the schedule of such counsel." Plaintiff was represented by counsel; in fact, plaintiff was represented by two attorneys—military and civilian. Although the board granted only a two-week delay in response to requests for both a six-week and four-month delay, that did not render plaintiff unrepresented; the extension was a reasonable attempt to accommodate counsel and, at the same time, not retain plaintiff past his ETS, which was May 26, 1999. *See* AR 635–200 ¶ 1–24*a*. The parties agree that the ETS is a "drop dead date"—a firm deadline beyond which the "board cannot convene." Tr. at 62–63.

It is true that plaintiff confronted a predicament not of his own making. The verbatim transcript supports plaintiff's contention that he complained about proceeding in the absence of counsel. *See* Transcript of Proceeding, *United States v. Clifford,* at 4, 55, 64 (Army Sep. Bd. Feb. 3, 1999) ("Verbatim Tr.").[7] Nonetheless, the court must reject plaintiff's argument that, once plaintiff was abandoned by counsel (on the eve of the proceeding, Capt. Scharfenberger denied that he had been assigned to represent plaintiff, and plaintiff's civilian counsel just failed to appear after his request for delay was denied), the proceeding was compromised. In so ruling, the court rejects any dilution of the board president's discretion to deny extensions. The board president was constrained by two imperatives: the requirement that proceedings not be unduly delayed and the immutable ETS date.

Defendant reasonably argues that plaintiff should not be accorded greater rights than the Army Regulations afford him. The court agrees. Yet, the board was not without recourse. *See* Verbatim Tr. at 4–5 (Board's recorder indicated that he had contacted Capt. Scharfenberger and tried to determine

---

7. When deciding a motion for judgment on the administrative record, the focal point for judicial review "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (per curiam); *see also Advanced Data Concepts v. United States,* 216 F.3d 1054, 1057 (Fed.Cir.2000). After plaintiff had demonstrated

that the summary of proceedings required by AR 635–200 ¶ 2–10*f* was not accurate, the court granted his request to supplement the administrative record, and plaintiff provided a verbatim transcription of the board's proceeding. *See Clifford v. United States,* No. 02–982C (Fed.Cl. June 27, 2003) (order). The court refers to the verbatim transcript rather than the administrative record where appropriate.

his availability for trial, but Capt. Scharfenberger refused to agree to any date other than March 2, 1999, which the board had determined was unreasonable.). Plaintiff's ETS was May 26, 1999—nearly four months after the date on which the board convened. While it is unclear what authority the board had over plaintiff's civilian counsel, who had made an appearance by writing the board to request a postponement, defendant's argument is not persuasive that the Judge Advocate Corps involves a "chain of command" separate from the Army and that the board was impotent to deal with the malingering Capt. Scharfenberger. Tr. at 57.

Although counsel was absent, plaintiff acted pursuant to the advice of his counsel at the board proceedings. Plaintiff began by stating: "At this time I can not make a statement here due to having a civil case pending. At the request of my attorney I can not make any statement." At oral argument, plaintiff's counsel asserted that the requirements provide for more than the mere advice of counsel, extending to a right to have counsel present at the board proceedings. See Tr. at 65. Plaintiff points to AR 15–6 ¶ 5–1d (1), which states: "If a respondent has been designated, the respondent and counsel will be afforded the opportunity to be present when legal advice is provided to the board;" AR 15–6 ¶ 5–6a, which states: "A respondent is entitled to have counsel and, to the extent permitted by security classification, to be present with counsel at all open sessions of the board;" and AR 15–6 ¶ 5–8a, which states: "Except for good cause shown in the report of proceedings, a respondent is entitled to be present, with counsel, at all open sessions of the board that deal with any matter concerning the respondent."

The record in the case at bar, however, establishes that the board provided counsel with an opportunity to be present, allowing two weeks of the six-week delay that plaintiff's military counsel had requested. Moreover, the board must provide for plaintiff's "entitlement" to counsel in the context of its directive not to delay proceedings unduly in accommodating certain counsel and the ETS

date. The record shows that the board endeavored to do just that.

The case of *Ponce–Leiva v. Ashcroft*, 331 F.3d 369 (3d Cir.2003), lends support to a finding that, although plaintiff's attorneys failed to appear at the board proceedings, plaintiff was not denied his entitlement to counsel. While *Ponce–Leiva* involved an alien in deportation proceedings, rather than a U.S.-citizen soldier, the court's analysis is instructive in that the asylum applicant had retained counsel for the deportation hearing, the hearing was scheduled in advance, and counsel requested a continuance less than a week before the hearing was to commence. The immigration judge denied the request for delay and the asylum applicant appeared at the hearing in the absence of counsel. The Third Circuit held that the denial of the delay request was neither an abuse of discretion on the part of the immigration judge nor a contravention of his right to counsel. Indeed, the asylum applicant "was represented, and counsel knew of his obligations. Counsel's failure to discharge his duties did not mean that [the applicant's] 'right to counsel' was violated; [the applicant] was simply the victim of poor lawyering." *Id.* at 376.

In reaching this conclusion, the Third Circuit distinguished two cases in which the denial of a continuance was held to be an abuse of discretion: *Castaneda–Delgado v. INS*, 525 F.2d 1295 (7th Cir.1975), and *Chlomos v. INS*, 516 F.2d 310 (3d Cir.1975). In *Castaneda–Delgado* the denial was found to be arbitrary and capricious because non-English speaking aliens were given only two days to secure representation. In *Chlomos* the abuse occurred when the court failed to give notice of the hearing to the alien's attorney, knowing well that the alien was represented and by whom. The *Ponce–Leiva* situation differed because while there was no evidence of "unnecessary delay or dilatory tactics," the "onus was on counsel to provide an adequate reason for his failure to appear." 331 F.3d at 376. Analogously, the board in the instant case complied with the applicable regulations and allowed counsel the opportunity to represent plaintiff, yet prevented any "unnecessary delay." [8]

---

8. Plaintiff insists that "the board president on

hearing day revealed to [plaintiff] for the first

If the board was required not to proceed until effort was made to secure the presence of counsel (in the case of Capt. Scharfenberger, to determine whether he was, in fact, counsel and, if so, to obtain his presence), what is the consequence of the failure or inability of one or both attorneys to be available at the next hearing date that would have been scheduled before plaintiff's ETS date? Although some cases appropriately are resolved based on the facts of a particular case, the inquiry is not *ad hoc.* The prerogatives of the board, the requirement that delay because of counsel's schedule should not be undue, and the constraints of the ETS date must be recognized. Because the court cannot make a ruling that is tantamount to second-guessing the board, *see Skinner v. United States,* 219 Ct.Cl. 322, 331–32, 594 F.2d 824, 829–30 (1979), the decision must not involve a re-weighing of evidence, including excuses for non-appearance made to the board president, *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986). Each of these factors, as well as their cumulative effect, weigh against plaintiff.

Plaintiff has failed to demonstrate that the right to counsel that the Army gave him was absolute without effectively telling the board president how to perform her job within the time constraints imposed by Army regulations and, as a consequence, how to exercise her discretion. This is redress that the court cannot provide. The court concludes that plaintiff has failed to establish that his discharge was predicated on an irrational refus-

al to continue the hearing or a violation of applicable regulations.

Assuming, *arguendo,* that the decision were held to be irrational or to violate the regulations, the record would not support a finding that plaintiff was prejudiced.

Plaintiff complains that the board violated Army regulations by proceeding in the unexcused (or inexcusable) absence of counsel in circumstances when time was not of the essence. The verbatim transcript submitted by plaintiff shows: 1) that he initially did not mount a defense on advice of civilian counsel, *see* Verbatim Tr. at 15 ("At this time, I can't make any statements here due to the fact that I have a civil court case that is pending and at the request of my attorneys, I make no statements whatsoever that might cause problems with my civil trial"); and 2) that during the hearing he attempted to defend himself and stated repeatedly that he would like to have the assistance of his civilian counsel,[9] *see* Verbatim Tr. at 55, 64, 67 ("Again, this is why I needed to have a legal representative present so that if these questions came up, I'd be able to sit there and ask legal representation and find out what the facts [are];" "Once again, I wish I had legal representation to make the summary for me;" "Basically, I wish I could say more. Unfortunately, I can't. At least not without legal representation. That's all I can say.")[10]

The verbatim transcript corroborates that substantial evidence was put on the record against plaintiff on the misconduct charges,

---

time that his military counsel unreasonably refused to cooperate and ditched his client," Pl's Br. filed Oct. 10, 2003, at 3–4, but points to no regulation requiring the board to inform a servicemember of the lack of cooperation manifested by his attorney.

9. Plaintiff explained that his military counsel was merely "of counsel;" he was "assisting [civilian counsel] in *just trying to work within the* [regulations] and let him know what was going on by way of how the Army works." Verbatim Tr. at 5.

10. *Sawyer v. United States,* 930 F.2d 1577, 1582 (Fed.Cir.1991), illustrates how the concept of prejudice affects the court's determination. The Claims Court found that the Navy's specialized medical review boards did not apply the legal standard of clear and convincing evidence that was mandated by regulation when evaluating the

evidence against a servicemember who claimed improper denial of disability benefits. *Sawyer v. United States,* 18 Cl.Ct. 860, 868 (1989). The error fundamentally affected how all the evidence was evaluated, such that the court reinstated his disability benefits, despite the evidence concerning the servicemember's blood alcohol level and its contribution to his injuries. On appeal the Federal Circuit ruled that the Board of Corrections for Naval Records properly denied the servicemember disability benefits because plaintiff had asked the correction board to review the merits of his claim, and the record contained clear and convincing evidence that his voluntary intoxication proximately caused his disabilities. The bar for prejudice thus has been set at a high threshold.

and that any prejudice hinges on whether, had plaintiff been represented by counsel, the board would have been persuaded to join with the dissent who wanted to recognize the mitigating effect of his "stellar peacetime record and combat decorations for bravery." Pl.'s Br. filed Oct. 10, 2003, at 5–6. In determining the type of discharge, two board members were not swayed by plaintiff's combat duty decorations for his deployment in Desert Storm and Somalia, including a Bronze Star for heroic or meritorious service. The fact that the third member had a different view does not demonstrate prejudice.

6. *Whether plaintiff had a constitutional due process right to a hearing with counsel present*

■ Plaintiff asserts that a "soldier does not waive [a] due process hearing by accepting the alternative Article 15 non-judicial punishment proceeding in-lieu-of demanding court-martial, as long as the soldier does not admit to the stigmatizing charges nor abandon an appeal." Pl.'s Br. filed June 9, 2003, at 8. The Army thus deprived him of a meaningful opportunity through defense counsel to argue a merits case. To preserve his liberty interest, plaintiff argues, he needed only to "contest the charges, or present a non-frivolous challenge about application of military evidentiary rules or procedure to the facts in his case." *Id.* at 17. Plaintiff purports to have done so through contesting the allegations against him: "Statements from [the prospective Army recruit] contradict each other;" "Never once in those statements did they say they saw me drinking or did they say that they saw [the recruit] drinking;" and "There are people we can't call for witnesses." Verbatim Tr. at 64–65. In plaintiff's appeal to his Army Commander dated March 11, 1999, he stated that there were "numerous discrepancies in the statements given by the people involved in the incident."

"[W]hen a constitutional challenge is raised to the implementation of statute or regulation, denial of judicial review of the challenged provisions would itself raise a 'serious constitutional question.'" *Holley,* 124 F.3d at 1468 (quoting *Weinberger v. Salfi,* 422 U.S. 749, 762, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Moreover, "when an action is stigmatizing there is an enhanced right to a hearing" in that "stigma can not be imposed by government without due process of law." *Holley,* 124 F.3d at 1470. In *Holley,* however, the Federal Circuit reversed a decision "that the Army was required to provide a board of inquiry in view of the stigmatizing nature of the general discharge and the derogatory statement of 'Misconduct Moral or Professional Dereliction or In Interest of National Security'" where a probationary officer whose discharge was classified as general (under honorable conditions) was separated without a board of inquiry. 124 F.3d at 1469.

The cases cited by the Federal Circuit in *Holley* involved stigmatizing discharges, but they granted relief to the servicemembers only where the armed services' own regulations were violated.[11] *See, e.g., Faircloth v. United States,* 186 Ct.Cl. 133, 1968 WL 9160 (1968) (granting relief where Navy violated requirement to hold hearing); *Casey v. United States,* 8 Cl.Ct. 234, 241 (1985) (granting relief where Army violated regulation requiring hearing). As the Federal Circuit explained, the regulation required "notice of the reasons for the proposed action and the opportunity to respond and to rebut the charges. Legal counsel was offered, and the opportunity to resign.... [M]inimum due process was met by this procedure, and stigma based on truth, when accompanied by due

11. "A 'stigma' may attach to a servicemember's discharge either from the characterization of the discharge or from the reasons recorded for the discharge, if such reasons present a 'derogatory connotation to the public at large.'" *Casey,* 8 Cl.Ct. 234, 241 (1985). In *Casey* the court found a stigma attached because the coded reason for the servicemember's discharge indicated that he used both drugs and alcohol, while the record indicated that he had abused only alcohol, not any other drugs. *Id.* at 242. The court distin- guished the facts before it from *Keef v. United States,* 185 Ct.Cl. 454, 1968 WL 9154 (1968), where the discharge code indicated "Separation-By–USAF directive-Individual release-Based on unique and unusual circumstances *not covered elsewhere in regulations." Keef,* 185 Ct.Cl. at 468. "It is a nondescript 'catch-all' reason for separation. Plaintiff has not shown why this stigmatizes him or permits derogatory connotations, and we find that it does not." *Id.* at 468–69.

**451**

process, can not be avoided." *Holley*, 124 F.3d at 1470.

Although the instant case does not involve a probationary officer, as did *Holley*, the same analysis should apply. First, the Army followed the requisite procedures outlined in the regulations. Plaintiff cannot establish that the Army published false information. Nor does he contest that he was afforded all of his rights under the Article 15 proceedings, which he chose voluntarily over trial by court-martial. As a result of the Article 15, the Army found that plaintiff had committed the charged offenses of absence without leave, failure to obey an order regarding personal contact with a recruit, and making a false official statement. Such charges do not convey a stigma, especially where they are not proved to be untrue. *See Holley*, 124 F.3d at 1470.

The only possible argument giving rise to due process considerations in the instant case is the alleged lack of representation by counsel, a tenuous claim at best. Notably, the Supreme Court has held that the Fifth Amendment does not require counsel in summary courts-martial.[12] *Middendorf v. Henry*, 425 U.S. 25, 48, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); *cf. Fairchild v. Lehman*, 814 F.2d 1555, 1558–60 (Fed.Cir.1987) (stating that Court of Military Appeals recognized *Middendorf's* holding, but finding no intelligent waiver of servicemember's statutory right to court-martial where based on erroneous advice of military counsel). Because the Army followed its regulations permitting representation by counsel, but within the confines of directives disallowing counsel from disrupting the schedule of the board, plaintiff received the process to which he was due.

## CONCLUSION

Accordingly, based on the forgoing,

Defendant's motion for judgment upon the administrative record is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.

---

12. Plaintiff distinguishes *Middendorf* because that case dealt with "summary" court-martial proceedings, whereas plaintiff faced a " 'formal board of officers' and adversarial adjudication with rules of evidence, such as rights to cross-examination, objections to evidence and testimony, compulsory attendance of military witnesses, sworn testimony, and challenges for cause of board members." Pl.'s Br. filed Oct. 10, 2003, at 8. AR 15–6 ¶ 1–5 states: "The primary function of any investigation or board of officers is to ascertain facts and to report them to the appointing authority." Because plaintiff was afforded representation, the nature of the proceedings is not dispositive.