NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4236
No. 11-1750
No. 11-3135
_____

ONESIO A. ZUNGUZA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review from
Orders of the Board of Immigration Appeals
(Board No. A087-943-340)
Immigration Judge:  Honorable Mirlande Tadal
_____

Argued July 10, 2012
Before:  FUENTES, HARDIMAN and ROTH, *Circuit Judges*.

(Filed:  September 5, 2012)

Joshua E. Bardavid [Argued]
22nd Floor
351 Broadway
New York, NY 10013-0000

Theodore N. Cox
Suite 701
401 Broadway
New York, NY 10013-0000

James J. Orlow
Orlow, Kaplan & Hohenstein
620 Chestnut Street
Suite 656
Philadelphia, PA 19106-0000
          *Attorneys for Petitioner*

W. Daniel Shieh [Argued]
Eric H. Holder, Jr.,
Jacob A. Bashyrov
Thomas W. Hussey
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
          *Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Onesio Zunguza petitions for review of the Board of Immigration Appeals'

(BIA's) final order of removal and its denials of his two motions to reopen proceedings.

For the reasons that follow, we will deny his petitions.

I

Zunguza is an Italian citizen who tried to enter the United States under the Visa

Waiver Pilot Program. He was detained at Newark International Airport on March 30,

2010, where he told Customs officials that he had entered the country with the intent of

getting an education. After an immigration officer determined that Zunguza's true intent

2

was to work in the United States, he was taken into custody and charged with inadmissibility.

Between April 5 and April 27, 2010, an immigration judge (IJ) granted Zunguza four continuances to obtain an attorney. Zunguza claimed he had been denied access to the money he brought from Italy and that he therefore was unable to pay for representation. When counsel entered an appearance at a May 6, 2010, hearing over which a second IJ was presiding, counsel requested "some time to talk to [Zunguza] and conduct some investigation." The IJ granted an additional week to file an asylum application but denied counsel's request for a longer continuance.

At a hearing on May 14, 2010, Zunguza applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), alleging persecution in Italy on the basis of his membership in a particular social group.[1] According to Zunguza, he was born in Mozambique and moved to Italy in 2002. After marrying an Italian national, he began working as a forklift operator in Parma for La Giovane, a privately owned company. While working there, he witnessed racism against "Black Africans" and eventually became their spokesman.

Zunguza allegedly organized several protests and strikes that slowed productivity at La Giovane and caused the company to lose business. Presumably because the

---

[1] Zunguza's attorney was not present at this hearing because of a scheduling conflict. The IJ warned Zunguza that if counsel was unable to appear at the merits hearing on June 18, 2010, Zunguza would have to proceed without counsel on that date.

company had ties to organized crime, the loss of business led to retaliation by the Mafia. He allegedly was attacked again in December 2009, when he was punched in the stomach and told to refrain from further protests. He purportedly was assaulted a final time in February 2010. According to Zunguza, the attackers bound his legs, but he escaped while they were opening the trunk of their car. He then left Parma for Milan, where he spent several days before moving to Bologna for a week. After relocating to Treviso, he came to the United States to avoid the Mafia's "extensive network of operators."

Zunguza testified at his merits hearing on June 18, 2010. On direct examination, he described his "negative experience" at La Giovane, where people with a "darker skin complexion" were treated badly. Zunguza testified that the Mafia "used to attack [him], they used to hit [him], they used to tie [his] feet, they used to break [his] foot, violent things." He claimed that he "tried to go" to other Italian cities, like "Florence or Rome or Sicily," but had failed because the Mafia had "an inside force inside the country that if they want to find you, they'll find you anywhere." Instead, he allegedly went to "Milan, Bologna, . . . Treviso, Padua, and many others." Zunguza also claimed to have unsuccessfully sought protection at the Parma police station.

On cross-examination, Zunguza acknowledged that he could not prove his attackers were members of the Mafia other than by speculating based on their appearance. In addition, he conceded that his asylum application failed to mention that he sought help from police. Zunguza added several facts on cross-examination, including

4

that he had been discovered by the Mafia in Milan, that he had gone to the police station there, and that he had been followed on a train in Bologna.

The IJ ultimately found Zunguza's testimony not credible because it "was often at variance with the information he provided in his asylum application and in variance with his [own] testimony." According to the IJ, specific information central to Zunguza's claims was absent from his asylum application and his testimony on direct examination, which had been "vague and generally unspecific." The IJ also noted that Zunguza had made several new claims on cross-examination, including "that . . . he specifically went to police in Milan or that he was followed to Bologna by 'mafia members' and . . . was . . . attacked after he left Milan." The IJ held that Zunguza was ineligible for either asylum or withholding of removal because he had not demonstrated objective evidence of past persecution or a well-founded fear of future persecution. The IJ also denied CAT protection because Zunguza had not shown that the Italian government would fail to protect him from the Mafia if he returned to Italy.

The BIA dismissed Zunguza's appeal on October 8, 2010. It affirmed the IJ's adverse credibility finding in light of "the omission of material events from the applicant's asylum application, and the lack of detail and specificity in that application regarding the incidents that allegedly befell him in Italy." Because Zunguza's testimony had not been credible, the BIA concluded that he "did not meet his burden of proof for asylum" or "the higher burden of proof for withholding of removal." Finally, the BIA

5

denied Zunguza's claim for CAT protection because it was based on a complete "absence of independent evidence."

On January 6, 2011, Zunguza filed a timely motion to reopen proceedings, arguing that his due process rights had been violated because the IJ had not given him enough time to prepare his case. The motion was supported with a new, thirteen-page affidavit, in which Zunguza provided more details about his alleged persecution in Italy.

The BIA denied Zunguza's motion on February 25, 2011, reasoning that he had "not identified any error of fact or law in the [BIA's] previously detailed decision that would alter" the adverse credibility finding. The BIA also found that he had not "provided any further evidence that might have supported his claim that his application for relief was denied because he did not have time to fully prepare for and support his case." According to the BIA, a "more detailed affidavit for the first time at [that] stage of the proceedings" could not "explain the material omissions from [his] asylum application."

Zunguza filed a second motion to reopen on June 13, 2011, arguing that there had been changed country conditions in Italy because "democratic uprisings in Tunisia, Libya, Yemen, and other North African countries" had "caused a dramatic surge in North African immigration to Italy, heightening anti-immigrant passions and violence in Italy since January 2011." Zunguza included two expert affidavits in support of his motion: one by Dr. Maurizio Albahari, a professor of Anthropology at the University of Notre

6

Dame who specializes in immigration to Italy with a partial focus on organized crime, and another by Dr. Marco Jacquemet, an Anthropology professor at the University of San Francisco who specializes in criminal networks, migration, and racism in Italy. Zunguza also submitted various news articles discussing immigration problems in Italy.

Zunguza's second motion to reopen was denied on July 13, 2011. The BIA began by noting that the motion was both time- and number-barred, but it acknowledged that a proper showing of changed circumstances constitutes an exception to the limitations on filing a motion to reopen. The BIA concluded that, "[e]specially when considered in light of the adverse credibility finding," Zunguza had "not established changed country conditions in Italy that would warrant an exception" to those limitations. Insofar as the affidavits attested to an influx of immigrants into Italy and resulting ethnic intolerance, those changes did not rise to the level of persecution, and Zunguza had not established that the Italian government has condoned or acquiesced in the rise of organized crime. The BIA also reasoned that the submitted news articles discussed only general conditions of unrest and did not establish a fear of harm particular to Zunguza that was sufficient to establish his eligibility for relief.

Zunguza filed a timely petition for review in this Court after each of the BIA's three final orders, and we consolidated those petitions.

7

II

We have jurisdiction over Zunguza's petitions pursuant to 8 U.S.C. § 1252. In exercising that jurisdiction, we consider only the BIA's rulings, but we review the IJ's reasoning to the extent it was adopted by the BIA. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). We review legal conclusions *de novo*, *Hua Wu v. Att'y Gen. of the U.S.*, 571 F.3d 314, 317 (3d Cir. 2009), and assess factual findings, including credibility determinations, under the deferential "substantial evidence" standard, *Chavarria*, 446 F.3d at 515, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

III

A

We begin with Zunguza's first petition for review, which appeals the denial of his applications for asylum, withholding of removal, and CAT protection. To be eligible for asylum, Zunguza had to show that he was "unable or unwilling to return to . . . [Italy] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). To qualify for withholding of removal, he had to "establish by a 'clear probability' that [his] life or freedom would be threatened in the proposed country of deportation." *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003) (citing *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991)). Finally, to warrant CAT protection, Zunguza had

8

to show "'that it [was] more likely than not that [he] would be tortured if removed to the proposed country of removal.'" *Silva-Rengifo v. Att'y Gen. of the U.S.*, 473 F.3d 58, 64 (3d Cir. 2007) (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002)).

In support of his first petition for review, Zunguza offered nothing but his own testimony and the statements in his asylum application. "The testimony of [an asylum] applicant may be sufficient to sustain the applicant's burden without corroboration, but only if [he] satisfies the trier of fact that [his] testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that [he] is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). The IJ's adverse credibility determination therefore was dispositive of Zunguza's claims. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 186 (3d Cir. 2003).

On appeal before the BIA, Zunguza argued that he did not have sufficient time to submit supporting documentation. At a hearing on May 6, 2010, the IJ granted Zunguza a one-week continuance to file an asylum application, but his counsel was denied additional "time to talk to [Zunguza] and conduct some investigation." According to Zunguza, if he had been provided a longer continuance, he could have obtained hospital records to corroborate his account.

An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. We have jurisdiction to review the denial of a continuance, *Khan v. Att'y Gen. of the U.S.*, 448 F.3d 226, 231 (3d Cir. 2006), and we do so for abuse of discretion, *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2003). Yet "'[t]he question of

9

whether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case.'" *Id.* (quoting *Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988)).

We find no abuse of discretion in the IJ's decision to deny Zunguza's attorney's request for additional time. As the IJ noted at the May 6 hearing, Zunguza had received four separate continuances without having filed an asylum application. This was ample time for him at least to request documentation to corroborate his claims, regardless of whether he was represented by counsel. *Cf. id.* at 376–77 (An asylum applicant's inability to obtain counsel does not constitute a violation of his rights to counsel or due process.). Zunguza also had nearly a month *after* obtaining counsel to request corroborating evidence,[2] but he failed to submit any such documentation at his merits hearing on June 18, 2010. Finally, Zunguza argues that more time was needed to prepare a detailed asylum application,[3] but his month's worth of continuances was sufficient for him to recall at least the central facts of his claim. Accordingly, we will deny Zunguza's first petition for review.[4]

---

[2] At the hearing on May 14, 2010, the IJ ordered that documentary evidence be filed by June 4, 2010.

[3] Zunguza similarly argues that he was denied due process when the IJ failed to grant him ample time to prepare his case. Zunguza did not make this argument in his direct appeal to the BIA. Instead, Zunguza raised the argument only in his first motion to reopen proceedings. *See infra* Part III.B. His due process argument therefore is not within the scope of his first petition for review.

B

Zunguza's second petition appeals the BIA's denial of his first motion to reopen proceedings. That motion alleged that his due process rights were violated because, in rejecting his counsel's request for a longer continuance, the IJ did not afford Zunguza sufficient time to prepare his case. In support of his motion, Zunguza attached a new, thirteen-page affidavit elaborating on his hearing testimony and asylum petition.

We review the denial of a motion to reopen for abuse of discretion. *Pllumi v. Att'y Gen. of the U.S.*, 642 F.3d 155, 158 (3d Cir. 2011). The BIA abuses its discretion only when it acts in a manner that is "'arbitrary, irrational, or contrary to the law.'" *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d

---

Even if we were to reach the issue, however, we would find that Zunguza failed to establish a denial of due process. To do so, Zunguza must show that he was denied "a full and fair hearing," that is, a "reasonable opportunity to present evidence on [his] behalf." *Cham v. Att'y Gen. of the U.S.*, 445 F.3d 683, 691 (3d Cir. 2006) (citation and internal quotation marks omitted). Our review of the record reveals that Zunguza was afforded such a "reasonable opportunity." And even if he received insufficient process, he cannot show the "substantial prejudice" required for a successful due process challenge. *See Jarbough v. Att'y Gen. of the U.S.*, 483 F.3d 184, 192 (3d Cir. 2007). To this day, Zunguza has not offered evidence sufficient to establish his eligibility for asylum, withholding of removal, or CAT protection. He therefore has not demonstrated prejudice resulting from the IJ's denial of his request for an additional continuance.

[4] At oral argument, Zunguza also claimed that the IJ's credibility determination was flawed because it relied solely on "omissions" in his asylum application. As Zunguza made scant reference to such an argument in his opening brief, this issue was waived. *Cf. United States v. Hoffecker*, 530 F.3d 137, 162 (3d Cir. 2008) (finding that a "one-sentence footnote falls far short of meeting the requirement that an appellant raise an issue in his opening brief or else waive the issue on appeal").

11

Cir. 1994)). "As a general rule, motions to reopen are granted only under compelling circumstances," because "'every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" *Id.* at 561–62 (quoting *INS v. Doherty*, 502 U.S. 314, 323 (1992)).

The BIA did not abuse its discretion by denying Zunguza's motion. "A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). "A motion to reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Id.* The motion also must demonstrate prima facie eligibility for asylum. *See Guo*, 386 F.3d at 563.

Zunguza's motion to reopen did not raise material, newly discovered facts that would warrant reopening his case. He submitted just one affidavit, in which he expanded on his own statements in his prior asylum application and testimony before the IJ. These facts "could . . . have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). In addition, Zunguza's self-serving statements, prepared long after his application was denied, were insufficient to explain the omissions and inconsistencies that resulted in the adverse credibility finding. Zunguza's affidavit, therefore, was an insufficient basis on which to grant his motion to reopen.

Nor did Zunguza's due process argument warrant reopening his case, as it relied only on facts that could have been presented in prior proceedings. Zunguza already had argued that the IJ abused her discretion by not affording him enough time to prepare his case, and his "due process argument merely recast[] his abuse-of-discretion argument in constitutional terms and c[ould] be denied for the reasons already stated." *Khan*, 448 F.3d at 236. Therefore, we will deny Zunguza's second petition for review.

C

Zunguza's third petition appeals the BIA's denial of his second motion to reopen. Generally, an alien may file only one motion to reopen, and that motion must be filed within ninety days of the BIA's final order. 8 C.F.R. § 1003.2(c)(2). These limitations do not apply, however, for motions based on changed country conditions arising in the country to which deportation has been ordered. *Id.* § 1003.2(c)(3)(ii). Because Zunguza's second motion was filed more than ninety days after the BIA's October 8, 2010, order, it had to be based on previously unavailable, material evidence of changed conditions in Italy.

Zunguza's motion pointed to the "recent tumult in North Africa and the migration of thousands of individuals fleeing the uprisings in Libya, Tunisia, Yemen and other such countries, and seeking shelter and aid in Italy," which he claimed "dramatically heightened anti-immigrant passions and racial animosity in Italy." Br. of Appellant at 22. The BIA concluded that these purported changes did not warrant reopening his case.

13

The BIA's findings are supported by substantial evidence in the record. First, Zunguza has not established changed conditions that would demonstrate prima facie eligibility for asylum, withholding of removal, or CAT protection. *See Guo*, 386 F.3d at 563. He points to a recent influx of African immigrants and a corresponding rise in anti-immigrant violence, but this "'mere generalized lawlessness and violence between diverse populations, of the sort which abounds in numerous countries and inflicts misery upon millions of innocent people daily around the world,'" is not sufficient for relief, *Konan v. Att'y Gen.*, 432 F.3d 497, 506 (3d Cir. 2005) (quoting *Abdille v. Ashcroft*, 242 F.3d 477, 494–95 (3d Cir. 2001)), because such racism and discrimination do not rise to the level of systematic and pervasive persecution, *Chen v. Ashcroft*, 381 F.3d 221, 233 (3d Cir. 2004). And while Zunguza has submitted evidence of the Mafia's persistent presence in Italy and its maltreatment of Italian workers, he has failed to establish that those acts are "committed by the government or forces the government is either 'unable or unwilling' to control." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (quoting *Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003)) (internal quotation marks omitted). Absent evidence of changed country conditions, the BIA acted within its discretion when it denied Zunguza's motion.

## IV

For the reasons stated, we will deny Zunguza's petitions for review.